131 N.J. Super. 599 (1975)
331 A.2d 286
ENERY VIRUET, ADMINISTRATRIX AD PROSEQUENDUM OF JOSE GARCIA, DECEASED, PLAINTIFF-APPELLANT,
v.
JORDAN SYLVESTER AND THE CITY OF TRENTON, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1974.
Decided January 14, 1975.
*600 Before Judges HALPERN, CRAHAY and ACKERMAN.
Mr. Laurence I. Tomar argued the cause for appellant (Messrs. Tomar & Kamensky, attorneys).
Mr. Robert E. Monaghan argued the cause for respondents (Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
The complaint in this wrongful death action (there was no pretrial) charged Jordan Sylvester, a Trenton policeman, and his employer, the City of Trenton, with the death of Jose Garcia "* * * without an excuse or justification, in a negligent, wanton and reckless manner, * * *." The case was tried on the issue of liability by the trial judge, without a jury, who entered a judgment in respondents' favor and against appellant.
*601 It is essential to briefly outline the divergent factual contentions to understand the issues presented on appeal. Respondents' version follows: At about 10:45 P.M., on March 13, 1970, uniformed Trenton police officers Jordan Sylvester and Charles Betz, while on routine patrol in their police car, observed a speeding car run through a stop sign. Having given chase, the officers ultimately forced the car driven by decedent to a stop at an angle, thus effectively cutting him off. Several passengers were in decedent's car at the time. As Sylvester exited his patrol car, decedent backed up his car and then "came [with the car] rushing towards" him. It appeared to Sylvester that decedent's intention was to run him over and kill him. After shouting "stop, stop," he fired two shots at the onrushing car resulting in decedent's death. The two passengers in decedent's car attempted to escape but were immediately apprehended by the police. Sylvester's version of the incident was, in all material respects, corroborated by Officer Betz.
The testimony of the passengers in decedent's car was that after decedent stopped his car, he backed up but never again went forward. The shot that killed decedent caused the car to go out of control and hit a parked vehicle. They denied decedent violated any of the motor vehicle laws while driving the car.
In rendering his oral decision, the trial judge made certain definite findings of fact, based on his interpretation of the applicable law, although he expressed his views in not too clearly a manner. It is crystal clear that he found as a fact that he believed the police version of the incident; that Sylvester had probable cause to believe decedent intended to run him down; that he used his gun in self-defense and had not acted wantonly or recklessly; that Sylvester was "negligent", and that decedent was contributorily negligent. Except for his finding Sylvester to be negligent, we are in complete accord with his conclusions that Sylvester was not liable.
*602 We disagree with the trial judge's finding that Sylvester was negligent. The term "negligence" in the law has many different connotations and applications. The rule of law in determining negligence in this type of situation is that when one is confronted with an emergency, with no time for thought, or to weigh alternative courses of action, but must make a speedy decision based on impulse and instinct gained from experience, the finder of fact, using the reasonable man test, may absolve him from liability even if a wiser course might have been selected if time permitted due deliberation be given to the matter. See Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 485-486 (1969); Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 317 (1956); Prosser, The Law of Torts (4 ed. 1971), § 33 at 168-173. Giving due deference and weight to the fact that Sylvester is a trained police officer who is taught to use his gun only under the most extreme circumstances, we are satisfied that the dynamics of the existing situation warranted the application of the enunciated doctrine of law.
The final issue presents a novel problem which has received very little treatment, if any, by our courts. Prior to trial, Garcia's death was under investigation by the Mercer County Grand Jury. Sylvester testified before the Grand Jury, and ultimately it returned no bill of indictment against him.
By way of discovery in the civil proceeding, appellant sought to obtain a copy of Sylvester's grand jury testimony. This request was predicated upon a story in The Trenton Times newspaper, which purported to be different than the testimony given by Sylvester at trial. After argument, the request made by appellant was denied, as was the application to us for leave to appeal. We believe the court erred in refusing to permit the requested discovery for several reasons.
(1) Under R. 3:6-6(a), (b) and (c), the testimony of witnesses called before a grand jury shall be recorded by an appropriate device or stenographer. As a matter of *603 practice, a defendant in a criminal case, upon his request, may obtain for examination prior to trial, almost as a matter of course, his own testimony or that of any witnesses called before the grand jury. If necessary, the trial judge in his discretion may, on his own initiative or in consultation with the prosecutor, make such protective order as will safeguard the required secrecy of the grand jury proceedings, but still protect the individual rights of a defendant or other litigant. R. 3:13-3(d). We perceive of no sound reason, in law or morality, why a civil litigant should not be entitled to the same right of discovery as a defendant charged with crime. See United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Marinelli v. New York, 71 Misc.2d 62, 335 N.Y.S.2d 545 (1972).
(2) In view of the liberal civil discovery practice utilized today under our Supreme Court Rules, and since Sylvester was not indicted, there would appear to be no sound reason to withhold the testimony sought by appellant. If justice is to be meaningful, absent a good reason for not doing so, the search for the truth should not be unduly circumscribed. See State v. Montague, 55 N.J. 387 (1970); State v. Farrow, 61 N.J. 434 (1972).
Therefore, the matter is remanded to the trial judge with directions that (1) by January 30, 1975 he permit appellant to examine and make copies of so much of Sylvester's grand jury testimony that he, in his sound discretion, feels is relevant and proper; (2) that appellant have until February 14, 1975 to move for a new trial, or other relief, (3) if a motion for a new trial is made, the same shall be decided by the trial judge and returned to us, with a full transcript of the proceedings, by April 1, 1975. If no application is made to inspect the grand jury minutes, or no new trial application is made within the time allotted, the judgment below will be deemed affirmed for the reasons expressed herein. We retain jurisdiction for the limited purposes enunciated.