239 N.J. Super. 172 (1990)
570 A.2d 1267
THE HOME NEWS PUBLISHING COMPANY, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF HEALTH AND THE NEW JERSEY STATE REGISTRAR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1989.
Decided March 1, 1990.
*173 Before O'BRIEN, HAVEY and STERN.
*174 Thomas J. Cafferty argued the cause for appellant (McGimpsey & Cafferty, attorneys; Thomas J. Cafferty and David Scott Mack, on the brief).
Michael J. Haas, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Michael J. Haas, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
This case involves plaintiff newspaper's right to random inspection of records of deaths registered within a stated period of time with defendant State Registrar of Vital Statistics.[1] The trial judge dismissed the newspaper's complaint which asserted both a common law right to such random inspection as well as a right under the Right to Know Law. N.J.S.A. 47:1A-1 et seq. The newspaper appeals and we now reverse under the Right to Know Law.
In November 1986, a reporter for plaintiff newspaper received information from a nurse, who allegedly worked in the delivery room of a local hospital, that a baby had died in October or November 1986 due to a lack of staff to watch monitors, although the parents had been told that the baby died of toxemia. According to the informant, the hospital administration was attempting to cover up the matter. Since she was fearful of losing her job, the informant did not give the reporter the name of the infant, but promised to verify the name if the reporter obtained it.
The reporter decided to search the death certificates on file in the local registrar's office to determine if an infant had died of toxemia at the involved hospital during the time period alleged by the informant. Because the reporter was aware of the local *175 registrar's practice not to release death certificates unless the name and year of death were provided, she telephoned the office of the local registrar and asked if she could:
... look through the death certificates for the month of October, was there a convenient time to do this. I didn't want them to do it, I just wanted to flip through the pages myself and just look, and I was told no.
At the suggestion of the local registrar,[2] the reporter called the State Registrar of Vital Statistics to make the same request which was again denied.
The reporter explained that on prior occasions in the performance of her duties she had examined police records, divorce files, liens, mortgages, deeds, tax records and the like and had never been denied access to the records nor required to pay a fee to randomly examine them. She did not request permission to go into a secured area where the records were kept, but rather that the records be brought to her at a counter for her examination. She conceded that she had not attempted to obtain any hospital records because of their confidentiality, nor did she contact any funeral directors in the area.
On December 29, 1986, the newspaper instituted this suit alleging that death certificates are public records both at common law and pursuant to N.J.S.A. 47:1A-1 et seq., and that "the refusal of defendants to release the requested information is contrary to plaintiff's common law right to such information" and "contrary to the terms and provisions of N.J.S.A. 47:1A-1 et seq." It sought an order allowing plaintiff access to the records.
Initially, the trial judge entered an order on May 22, 1987, transferring the case to the Appellate Division pursuant to R. 2:2-3(a)(2). After oral argument, we remanded it to the Law Division on March 16, 1988, concluding that the Law Division *176 had jurisdiction to hear and determine the issues raised by plaintiff's complaint, "particularly since the issues raised are fact sensitive and require development of a record."
At the trial on August 15, 1988, the newspaper reporter, as well as the State Registrar of Vital Statistics and the local registrar testified. The trial judge noted that both registrars testified "... that the document itself is not available to the general public, that copies may be secured if a name is supplied and a time period is requested for which there is a fee." Although the State Registrar had testified that this procedure was necessary for the preservation of the records which precluded a random search by the public, the trial judge found that the possible defacement or destruction of the records was not a valid reason to deny access. The judge further found,
... that records of ... deaths, ... by the nature of their definition being kept by a state agency are public records, but I must recognize the fact that there are by statutory interpretation two kinds of public records, one which the citizens of this state and the persons having standing to act as citizens such as the Home News here must be entitled to for the protection of our citizens and to keep a watchful eye on the workings of a public agency or public official and those public records which are solely identified as the historical records of our private lives. The state keeps these records for the purposes of preservation only.... [T]hose public records have to be governed by a doctrine of confidentiality versus public interest, and I believe that's why an exception is set forth in the statute under [N.J.S.A. 26:8-23] which allows the Department to monitor and decline permission and to set regulations, to limit the exercise of private individuals and/or those in standing to examine freely at random those records.
I am not concerned, as I said before, with the loss, alteration, defacement. I think under our modern conveniences the original record can be safely preserved without any problems.
Thus, although the trial judge found death certificates to be public records, he concluded that by their nature they are a form of confidential public record. He noted the extensive personal information in a death certificate and raised the question as to a truthful disclosure of that information if the informant knew the information could be randomly examined by anyone. Referring to N.J.S.A. 47:3-16, which defines "public records," the judge concluded that a death certificate

*177 ... is not a record of transaction of public business and as such should not be made available because I believe the necessity of interest in confidentiality outweighs the necessity for the general public to have access, to freely random access to these documents.
Referring to testimony by the local registrar that at some time prior to 1977 a form of random access was permitted which the State Registrar has since precluded, the judge decided that this did not affect his conclusion as to the confidentiality of the record. He also found that the method established by the State Registrar for obtaining access is reasonable.
While we understand the trial judge's concern for the confidentiality of the extensive personal information required to be included in a death certificate, we conclude that the Legislature has not excepted these records from the Right to Know Law.[3]N.J.S.A. 47:1A-2 includes as public records:
... [A]ll records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the state or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the state or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the `custodian' thereof).
*178 The Legislature has required the State Department of Health to provide for the registration of vital records. N.J.S.A. 26:8-7. No one is permitted to bury or make other final disposition of a dead body within this state or remove a dead body from the state without securing a proper death certificate. N.J.S.A. 26:6-5.1. The funeral director is responsible for the proper execution of the death certificate which he must file with the local registrar in exchange for a burial or removal permit. N.J.S.A. 26:6-6. A death certificate is required to contain such items as shall be listed on the form approved by the Department of Health under N.J.S.A. 26:8-24. See N.J.S.A. 26:6-7. Pursuant to N.J.S.A. 26:8-24c, blank forms of death certificates to be used in registering deaths are prepared by the State Registrar. N.J.S.A. 26:6-8 specifically provides in part:
In the execution of a death certificate, the personal particulars shall be obtained by the funeral director from the person best qualified to supply them. The death and last sickness particulars shall be supplied by the attending physician; ... The burial particulars shall be supplied by the funeral director.
N.J.S.A. 26:8-4 provides:
Upon demand of the State Registrar in person, by mail, or through the local registrar, every physician, midwife, informant, funeral director, or other person having knowledge of the facts relative to any birth, death, fetal death, or marriage, shall supply such information as he may possess, upon a form provided by the State Registrar or upon the original birth, death, fetal death, or marriage certificate.
It is clear from these statutory provisions that the Legislature has made it mandatory that information relating to deaths be supplied by various persons on death certificate forms provided by the State Registrar and required by law to be arranged, bound and permanently preserved in a systematic manner. N.J.S.A. 26:8-24e. The State Registrar is also required to:
....
f. Prepare and maintain a comprehensive and continuous index of all vital records registered, the index to be arranged alphabetically;
1. In the case of deaths, by the name of the decedent;
Thus, death certificates are public records within the definition contained in N.J.S.A. 47:1A-2 and "[e]very citizen of this State, *179 during the regular business hours maintained by the custodian of any such records, shall have the right to inspect such records." N.J.S.A. 47:1A-2.
The State Registrar argued, and the trial judge found, that death certificates are excepted from the provisions of N.J.S.A. 47:1A-2 by another statute, i.e., N.J.S.A. 26:8-1 et seq., and in particular N.J.S.A. 26:8-23, which provides as follows:
The state department shall have charge of the registration of births, deaths, fetal deaths and marriages and shall procure the prompt and accurate registration of the same in each registration district and in the department. The department may promulgate any rule or regulation which it deems necessary for the uniform and thorough enforcement of this section.
The department may decline permission to examine any record except in the presence of an officer or employee of the department.
The trial judge concluded that this section has
... created an exception that the department may decline permission to examine any record except in the presence of an officer or employee of the department, and that this constitutes an exception under the Right to Know Law and the records are not to be available for general public inspection.
We believe the trial judge has read more into the statute than its language provides. If that statute provided that death certificates "are not to be available for general public inspection" then this would be "any other statute" creating an exception to N.J.S.A. 47:1A-2. However, the statute does not say this. It deals with the means of examination, not the right to access. In fact, the language of N.J.S.A. 26:8-23 is totally consistent with the language of N.J.S.A. 47:1A-2, which provides:
... Every citizen of this state shall also have the right, during such regular business hours and under the supervision of a representative of the custodian, to copy such records by hand, and shall also have the right to purchase copies of such records. [Emphasis supplied.]
Both statutes simply provide that the custodian may require that an officer, employee or representative be present when the records are examined.
Had the Legislature intended to make death certificates confidential it would have so provided, as it did in the case of the birth defects registry established by the Department of *180 Health pursuant to N.J.S.A. 26:8-40.21, where the Legislature provided in N.J.S.A. 26:8-40.23:
The confidential reports made pursuant to this act are to be used only by the Department of Health and other agencies that may be designated by the Commissioner of Health and shall not otherwise be divulged or made public so as to disclose the identity of any person to whom they relate; and to that end, such reports shall not be included under materials available to public inspection pursuant to P.L. 1963, c. 73 (C. 47:1A-1 et seq.).
We therefore conclude that death certificates are public records under the Right to Know Law, available for inspection by any citizen, including a newspaper reporter, who may also copy them under the supervision of a representative of the registrar and may obtain a copy.
Since we find death certificates to be public records within N.J.S.A. 47:1A-2, we do not address the common law definition of public records which is broader than that contained in the Right to Know Law, Nero v. Hyland, 76 N.J. 213, 221, 386 A.2d 846 (1978).[4]
It is obvious that the problem presented by this case is that the newspaper reporter did not have the name of the person whose death certificate she sought to inspect. As noted, the Legislature has provided that the State Registrar maintain a comprehensive and continuous index of deaths "by the name of the decedent." N.J.S.A. 26:8-24.[5] The State Registrar *181 testified to the procedure followed in numbering, coding and binding death certificates. He explained that the continuous index also contains the number assigned to each certificate which is used to locate a certificate upon request. He testified that, in order to examine an original death certificate, the applicant must first complete a search request form or supply the name of the decedent whose record is sought and the year of his or her death. A search is then made of the records index to obtain the number assigned to that decedent's death certificate. When obtained, the original certificate is brought to the front desk, where it can be examined by the applicant and a certified copy can be provided. Thus, the indexing system is geared to the name of the decedent as required by the Legislature.
The Registrar argues that the Legislature intended to limit access to the records to a search by the Registrar only and not the individual seeking access, citing N.J.S.A. 26:8-62 and 64. However, we conclude these sections simply deal with the certification of a record and the fees to be paid for a search conducted by the State Registrar. N.J.S.A. 26:8-64a provides in part:
For any search of the files and records of births, deaths, or marriages when the correct year only is supplied by the applicant, whether or not a certification or certified copy is made, the State Registrar shall be entitled to a minimum fee of $4.00, plus a fee of $1.00 for each additional year searched, said fee to be paid by the applicant, except as provided by section 26:8-63 of the Revised Statutes. Each additional copy is $2.00.
In addressing the question of fees, the trial judge found the statutory fees to be reasonable and within the legislative prerogative, and therefore he simply decided "against the Home News on the issue of the fees...." Since the judge decided that death certificates are not public records under the Right to Know Law, he did not address the question of fees to be paid for the random search sought by the newspaper reporter.
*182 Although we have concluded that death certificates are public records within N.J.S.A. 47:1A-2, we recognize that the fee structure established by the Legislature is not adaptable to a random search where the name of the decedent is unknown, as in this case. Since the State Registrar denied the requested inspection, no fee was established for the type of random inspection sought. We conclude that the appropriate fee should initially be set by the State Registrar, subject to review by the trial judge.
Accordingly, the matter is remanded to the trial judge for entry of an order permitting plaintiff newspaper, through its representative, to randomly search the record of death certificates on file with the State Registrar for the time period and locality requested.[6] The order shall provide that the random inspection be held in the appropriate registrar's office during regular business hours, at a place determined by the registrar and in a manner so as to preserve the integrity of the records, and in the presence of a representative of the registrar, and for a fee to be fixed by the registrar[7] in a reasonable amount which is not tantamount to denial of access to the records. We do not retain jurisdiction.
NOTES
[1] The State Registrar of Vital Statistics is appointed by defendant, State Department of Health. N.J.S.A. 26:8-9.
[2] The local registrar is not named as a defendant in this suit. The local registrar is appointed by the local board having jurisdiction or by the governing body where there is no separate board of health, N.J.S.A. 26:8-11, but is under the supervision of the State Registrar. N.J.S.A. 26:8-24a, b.
[3] We note that Executive Order No. 9 issued by Governor Hughes on September 30, 1963, provides, in pertinent part,

3. The following records shall not be deemed to be public records subject to inspection and examination and available for copying pursuant to the provisions of Chapter 73, P.L. 1963:
....
(c) Records concerning morbidity, mortality and reportable diseases of named persons required to be made, maintained or kept by any State or local governmental agency;
....
Since the State Registrar has not argued that Executive Order No. 9 provides an exception to the Right to Know Law pursuant to N.J.S.A. 47:1A-2, we express no opinion as to its effect on the otherwise clear legislative expression that death certificates are public records in N.J.S.A. 26:8-62. We simply note the limitation in paragraph 4 of Executive Order No. 9 which provides:
4. This Executive Order shall in no way be interpreted to replace or affect the right that the general public has, by common law, judicial decision, statute or otherwise, to examine and copy public records and shall be limited in its application to the provisions of Chapter 73, P.L. 1963.
[4] At common law a citizen is required to demonstrate some "personal" or "particular" interest in the material to be examined. McClain v. College Hosp., 99 N.J. 346, 354, 492 A.2d 991 (1985). At common law there is no absolute right to inspect documents, whereas under the Right to Know Law, any citizen, without any showing of personal or particular interest, has an unqualified right to inspect public documents if they are, in fact, statutorily defined records. Techniscan v. Passaic Valley Water, 113 N.J. 233, 236, 549 A.2d 1249 (1988). In this case we have concluded that death certificates are records to which the right-to-know law applies and are not records "made by public officers in the exercise of public functions" which are common law records. Ibid.
[5] This section does not mean that a person who does not know the name of the decedent whose death certificate he seeks to inspect, shall be denied access to the record if he has other identifying criteria such as in this case. Thus, the policy requiring submission of a name to obtain the record violates the Right to Know Law.
[6] The State Registrar may refer the search to the local registrar to lessen the quantity of certificates to be randomly inspected.
[7] Since the fee for a search of the records by the registrar had been fixed by the Legislature, N.J.S.A. 26:8-64, the Legislature may wish to fix fees for the random search herein approved. The Department of Health may promulgate such reasonable rules for such a random search and fix the fees therefor pursuant to N.J.S.A. 26:8-23 and the Administrative Procedures Act, N.J.S.A. 52:14B-1 et seq.