258 N.J. Super. 573 (1992)
610 A.2d 903
KEN SHUTTLEWORTH AND SOUTHERN NEW JERSEY NEWSPAPERS, INC., PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
THE CITY OF CAMDEN; THE POLICE DEPARTMENT OF THE CITY OF CAMDEN; THE CUSTODIAN OF RECORDS FOR THE POLICE DEPARTMENT OF THE CITY OF CAMDEN; THE MEDICAL EXAMINER OF THE COUNTY OF CAMDEN; AND THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1992.
Decided August 4, 1992.
*577 Before Judges J.H. COLEMAN, STERN and KEEFE.
Francis J. Monari, Assistant City Attorney, argued the cause for appellants City of Camden (Karen Taylor-Lewis, Camden City Attorney, attorney, Francis J. Monari, of counsel and on the brief).
Linda K. Danielson, Deputy Attorney General, argued the cause for appellant-cross respondent Medical Examiner of Camden County (Robert J. Del Tufo, Attorney General, attorney; Linda K. Danielson, of counsel and on the brief).
John C. Connell argued the cause for respondents-cross appellants (Archer & Greiner, attorneys).
The opinion of the court was delivered by STERN, J.A.D.
While in police custody on November 27, 1986, Mark Watson was shot to death. A subsequent investigation by law enforcement officials resulted in the filing of no charges or complaints. Claiming that scrutiny is in the public interest plaintiffs, Southern Jersey Newspapers Inc., publisher of the Courier Post, and its reporter Ken Shuttleworth, seek access to and review of the police files and the autopsy report. Their application was granted in substantial part by a judge of the Law Division who entered an order of disclosure of 26 documents from the City's police file and the autopsy report after reviewing them in camera. Defendants appeal from the disclosure order and plaintiffs cross appeal from that portion of the order denying access to other documents, autopsy photos, counsel fees and costs. Defendant City of Camden[1] claims that the ordered *578 disclosure of material in its police file is not required by the Right to Know Law, N.J.S.A. 47:1A-1 et seq., because the investigative file is not a "public record" and that plaintiffs do not have a sufficient interest to obtain access to the records under the common law. The Medical Examiner asserts that the autopsy report, also made subject to review, is a "public record" but is excepted from disclosure under the Right to Know Law. He also challenges the Law Division's order of disclosure under the common law.

I.
It is undisputed that Watson was arrested by the Camden police officers and was thereafter shot to death while in police custody on November 27, 1986. Subsequently, an internal investigation was conducted by the Police Department of Camden and by the County Prosecutor. An autopsy was performed by the County Medical Examiner. The FBI also conducted an investigation, apparently to ascertain if there was a federal civil rights violation. A Camden County grand jury returned a "no bill" in February 1987. Press conferences and releases revealed the results of the investigation, and between February 1987 and November 1988 Shuttleworth unsuccessfully sought to obtain access to the relevant investigative files and reports from defendants and others.

II.
The City first claims that its police file is not a "public record" and that, even if it were, disclosure under the Right to Know Law (RKL), N.J.S.A. 47:1A-1 et seq., is excepted because of Executive Orders of the Governor.
The RKL embodies policy which promotes unrestricted public access to "public records." N.J.S.A. 47:1A-1. The critical question thereunder, therefore, is whether the material sought is a "public record." N.J.S.A. 47:1A-2 provides:

*579 Except as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the "custodian" thereof) shall, for the purposes of this act, be deemed to be public records. Every citizen of this State, during the regular business hours maintained by the custodian of any such records, shall have the right to inspect such records.... [emphasis added]
If a document is a "public record" access to it is an absolute right unless a specific exception applies. Techniscan v. Passaic Valley Water, 113 N.J. 233, 236, 549 A.2d 1249 (1988); McClain v. College Hosp., 99 N.J. 346, 354, 492 A.2d 991 (1985). Unlike the right of access under the common law, "any citizen, without any showing of personal or particular interest, has an unqualified right to inspect public documents if they are, in fact, the statutorily-defined records" under the RKL. N.J. Newspapers v. Passaic County, 127 N.J. 9, 14, 601 A.2d 693 (1992); Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236, 549 A.2d 1249 (emphasis in original); see also Loigman v. Kimmelman, 102 N.J. 98, 101, 505 A.2d 958 (1986). And there is no reason to suggest that a newspaper does not have the same right of access to a "public record" under the RKL as a private citizen. See N.J. Newspapers v. Passaic County, supra; South Jersey Pub. v. N.J. Expressway, 124 N.J. 478, 487, 497, 591 A.2d 921 (1991); Techniscan v. Passaic Valley Water, supra, 113 N.J. at 235, 549 A.2d 1249; cf. Asbury Park Press v. Dept. of Health, 233 N.J. Super. 375, 381, 558 A.2d 1363 (App. Div. 1989), certif. den. 117 N.J. 646, 569 A.2d 1344 (1989); Red Bank Register v. Board of Educ., 206 N.J. Super. 1, 7, 501 A.2d 985 (App.Div. 1985). Thus, plaintiffs are entitled to access to the records they seek if they are "public records" as defined in N.J.S.A. 47:1A-2.
Public records must be documents "required by law to be made, maintained or kept on file" by public bodies such as the *580 City of Camden. N.J.S.A. 47:1A-2. See Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236, 549 A.2d 1249. The records sought by plaintiffs' complaint specifically include all reports relating to Watson's arrest and the related firearm discharges which resulted in his death and the wounding of two police officers. Plaintiffs also sought access to tape recordings of the investigation, the police inventory of Watson's possessions, and copies of any rules or procedures of the Camden Police Department pertaining to firearms in the area of prisoner detentions.[2] Defendants argue that even if the records are required to be made, maintained or kept on file, they are not "public records" by virtue of relevant regulations and Executive Orders which are authorized exceptions to the RKL.
Plaintiffs insist that N.J.S.A. 40:48-6[3] and Camden Code §§ 5-97 and 87-2A(3) require these records to be made or maintained and that they are therefore "public records" under the RKL. However, neither the statute nor the municipal code specifically requires that the investigative reports plaintiffs seek be made, maintained or kept on file. Rather, they provide how material which is in the possession of the government, whether by virtue of some legal requirement or otherwise, is to be maintained. Thus, they need not be "maintained" by law within the meaning of the RKL. See N.J. Newspapers v. *581 Passaic County, supra, 127 N.J. at 16, 601 A.2d 693 (telephone bills of freeholders not required to be "made, maintained or kept by law"); Nero v. Hyland, 76 N.J. 213, 221, 386 A.2d 846 (1978) (character investigation of prospective lottery official not "mandated by law"; report of such investigation therefore not public record under RKL). See also Asbury Park Press v. Dept. of Health, supra, 233 N.J. Super. at 380-81, 558 A.2d 1363; Home News Pub. Co. v. State, 224 N.J. Super. 7, 11-12, 539 A.2d 736 (App.Div. 1988); Red Bank Register v. Board of Educ., supra, 206 N.J. Super. at 6-7, 501 A.2d 985. Moreover, the definition of what may be included as public record under the RKL has been "strictly construed," Home News Pub. Co. v. State, supra, 224 N.J. Super. at 11, 539 A.2d 736, to prevent "expansion of the plain wording of the definition of public record under [the] Act." Nero v. Hyland, supra, 76 N.J. at 221, 386 A.2d 846.
We do not understand the Law Division's order of February 28, 1991 to have ordered disclosure under the RKL. If it had, no balancing would have been necessary and no in camera review, as engaged in by the trial judge here, would have been necessary or appropriate. In any event, we need not now decide whether the police investigative file is a "public record" or is subject to an exception under the RKL[4] because if access is required under the common law, there might be nothing remaining to be disclosed under the RKL.[5] That is not to say that in some cases, rights under the RKL, under which no standing and balancing are required, should not be decided first because of the nature of the issues thereunder and the statutory *582 right to access. However, because the trial judge granted relief under the common law, we proceed directly to a review of the common-law questions as disposition thereof may be dispositive of all issues under the RKL. See e.g. South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 496-98, 591 A.2d 921; Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236-38, 549 A.2d 1249; Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 375, 294 A.2d 425 (1972) (not deciding issue under RKL in light of common law right to access). We also do so because "[i]t is well established that the common law right to inspect and examine public documents is not curtailed by the Right to Know Law and the definition of public record at common law is broader than under that statute." Red Bank Register v. Board of Educ., supra, 206 N.J. Super. at 7, 501 A.2d 985.

III.
"A citizen has a common-law right to inspect public documents if they are public records, if the citizen has requisite interest to inspect the records, and if the interest in disclosure outweighs [the need for] confidentiality." Home News Pub. Co. v. State, supra, 224 N.J. Super. at 16, 539 A.2d 736. See also e.g., South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 487-88, 591 A.2d 921; Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236-37, 549 A.2d 1249. The definition of "public record" in this context is broader than under the RKL; under the common law a public record is
one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. [South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 487, 591 A.2d 921, quoting Nero v. Hyland, supra, 76 N.J. at 222, 386 A.2d 846].
These materials include almost every document recorded, generated, or produced by public officials, whether or not "required by law to be made, maintained or kept on file," as required under the RKL. N.J.S.A. 47:1A-2. Thus, "written memorials *583 `made by public officers in the exercise of public functions' are common-law public records even though they may not be so under the Right to Know Law." Loigman v. Kimmelman, supra, 102 N.J. at 102, 505 A.2d 958, quoting Nero, supra, 76 N.J. at 222, 386 A.2d 846; see also N.J. Newspapers v. Passaic County, supra, 127 N.J. at 13, 601 A.2d 693; Irval Realty, supra, 61 N.J. at 375, 294 A.2d 425. There can be little doubt, therefore, that the materials plaintiffs seek from the City come within the common law definition of "public record." See Asbury Park Press v. Seaside Heights, 246 N.J. Super. 62, 64, 586 A.2d 870 (Law Div. 1990), where Judge Serpentelli found that "police reports concerning [an] alleged beating of [a] citizen by law enforcement officers" were common-law records to which a newspaper had the right of access even though they were not "public records" under the RKL.
Camden concedes that the internal police records and reports are public records under the common law but contends that plaintiffs lacked sufficient interest to obtain access when the need for confidentiality is considered. However, a citizen, and the press on its behalf, see South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 496-97, 591 A.2d 921; see also N.J. Newspapers v. Passaic County, supra; Asbury Park Press v. Dept. of Health, supra, 233 N.J. Super. at 381, 558 A.2d 1363; Red Bank Register v. Bd. of Ed., supra, 206 N.J. Super. at 7, 501 A.2d 985; Asbury Park Press v. Seaside Heights, supra, does not have to prove a personal interest in order to satisfy the common law standing requirement. South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 487, 591 A.2d 921; Asbury Park Press v. Dept. of Health, supra, 233 N.J. Super. at 382, 558 A.2d 1363. Rather,
... a newspaper's interest in "`keep[ing] a watchful eye on the workings of public agencies'" is sufficient to accord standing under the common law. Red Bank Register v. Board of Educ., 206 N.J. Super. 1, 9, 501 A.2d 985 (App.Div. 1985) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579-80 (1978). [South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 487, 591 A.2d 921].
*584 The real issue before us, therefore, is only whether the public's interest in disclosure outweighs the government's need for confidentiality. In deciding that issue we must note that:
... the citizen's common-law right to gain access to ... public records requires a balancing of interests. McClain v. College Hosp., 99 N.J. 346 [492 A.2d 991] (1985). "The balancing process must be concretely focused upon the relative interests of the parties in relation to these specific materials." Id. at 361 [492 A.2d 991]. The process should be "flexible and adaptable to different circumstances and sensitive to the fact that the requirements of confidentiality are greater in some situations than in others." Id. at 362 [492 A.2d 991]. [Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236, 549 A.2d 1249].
See also, e.g., Home News Pub. Co. v. State, supra, 224 N.J. Super. at 17, 539 A.2d 736. And in weighing the competing factors, our Supreme Court has said that:
As the considerations justifying confidentiality become less relevant, a party asserting a need for the materials will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need. Ibid. [Techniscan, supra, quoting McClain v. College Hosp., supra, 99 N.J. at 362, 492 A.2d 991].
In this balancing process, "the focus must be always on `the character of the materials sought to be disclosed.'" Loigman v. Kimmelman, 102 N.J. 98, 112 [505 A.2d 958] (1986) (quoting State v. Doliner, 96 N.J. 236, 248 [475 A.2d 552] (1984)). [Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236-237, 549 A.2d 1249].
Plaintiffs insist that their interest on the public's behalf to examine the internal police documents in question far outweighs any interest in confidentiality since the citizen killed while in police custody cannot provide any information, the recorded details of the incident are in the exclusive custody and control of the investigating law enforcement authorities and the police officers involved in the incident have been exonerated. Plaintiffs suggest the possibility of a coverup by Camden and other law enforcement investigators and the fear of others to come forward. Camden responds by noting that disclosure of the material plaintiffs seek would put a "chilling effect" on internal investigations which involve "internal efforts to analyze problems and correct deficiencies" and, therefore, should be protected. See Loigman v. Kimmelman, supra, 102 N.J. at *585 107, 505 A.2d 958. The City further claims that it has provided sufficient information in press releases and otherwise to satisfy the public interest and that the information released by the FBI and County Prosecutor after their investigations provided adequate information. However, the press releases are based on information circulated by law enforcement officials allegedly generated by their investigation, and the veracity of that information cannot be challenged. This is particularly significant when the press releases deal with a confidential investigation by law enforcement of its own conduct and the plaintiffs seek disclosure to further a "public good" as opposed to a private need. See Loigman v. Kimmelman, supra, 102 N.J. at 104, 505 A.2d 958.
While there is a real need to deny access where there is an ongoing law enforcement investigation, or where the protection of witness information or a witness's identity is at stake, the same values do not survive a balancing after the investigation is closed.[6] And where there is no confidential informant involved or other "high degree of need for confidentiality" such that "disclosure to anyone, including a judge, will irreparably hamper an agency's procedures," thus precluding in camera review, see Loigman v. Kimmelman, supra, 102 N.J. at 108-109, 505 A.2d 958, but confidentiality of a particular witness or specific information must nevertheless be maintained, an in camera review of the material can protect those interests *586 before disclosure is ordered with redaction or otherwise. The in camera review may therefore become an integral part of the balancing approach. See Loigman v. Kimmelman, supra; Home News Pub. Co. v. State, supra.
In Loigman, supra, 102 N.J. at 108-112, 505 A.2d 958, our Supreme Court determined that the "exquisite weighing process by the trial judge" must consider the parties' assertions regarding access and confidentiality and decide whether in camera review by the court is appropriate. If the trial court finds it appropriate, it should require the governmental body seeking to maintain the confidentiality of law enforcement records to "classify, describe and, in some cases, index the materials," a procedure described in Vaughn v. Rosen, 484 F.2d 820, 826-828 (D.C. Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Loigman, supra, 102 N.J. at 109, 505 A.2d 958.
If the court deems it necessary to view the materials in camera, it will thereafter make a final determination as to whether, by further excision or deletion of privileged and confidential materials, it can appropriately order the materials released. In doing so, some of the considerations that may be examined will include: (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to valuative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials. [citations omitted.] Against these and any other relevant factors should be balanced the importance of the information sought to the plaintiff's vindication of the public interest. [Loigman v. Kimmelman, supra, 102 N.J. at 113, 505 A.2d 958].
Here the trial court ordered the City to provide to it a Vaughn index of relevant documents for in camera review.[7] *587 The judge then reviewed in camera the index and some of the materials listed therein, after which he ordered release of the material he reviewed. By order dated February 28, 1991 the judge ordered that "[a]ll documents, excluding any Vaughn index which the City of Camden and the Police Department of the City of Camden were ordered to submit to the court for in camera review are deemed public records and shall be disclosed to the plaintiffs in their entirety in the unredacted form submitted to the court...." The judge further ordered that "[a]ny other documents which the City of Camden and the Police Department of the City of Camden were not ordered to submit to this court for in camera review, but which are listed in the inventory [corresponding to the Vaughn index] are irrelevant to the issues in this case, and so are not deemed to be public records and shall not be disclosed to plaintiffs...." The court found that the records were primarily factual as reports of Watson's arrests and the events surrounding his death. The judge then reviewed the Loigman criteria and determined that (1) there would be neither interference with police functions by disclosure nor any "chilling effect on citizens [giving information] in the future"; (2) the complaining witness against Watson gave information knowing it was "likely" "she would have to testify in a case" against Watson; (3) there "is not one iota of anything, of or ... any statement word or phrase" indicating any impact upon agency "self-evaluation"; (4) there were "no valuative reports" involved; (5) there were "no reports of remedial measures" "instituted by the investigative agency," and (6) there were no "disciplinary or investigatory" or remedial proceedings which could be "implicated" or affected by *588 disclosure.[8]
If there is a basis in the record to do so, we must generally defer to the trial judge's determination, after reviewing the documents and balancing the parties' interests, that there is a common law right of access, cf. Loigman, supra. Rova Farms Resort v. Investors Ins., Co., 65 N.J. 474, 484, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). See also, e.g. State v. Milligan, 71 N.J. 373, 384, 365 A.2d 914 (1976) (disclosure of informant; test is "whether the trial court abused its discretion after weighing the competing considerations of the balancing test"); cf. Philadelphia Newspapers v. Dept. of Law, 232 N.J. Super. 458, 466, 557 A.2d 688 (App.Div. 1989) (noting on appeal from state administrative agency denial of records that "[a] trial court is better able than an appellate tribunal to ... balance the parties' interests when that must be done to determine whether there is a common-law right of access.") Moreover, to the extent we can be said to be reviewing essentially a legal determination, we can review the documents which the trial judge ordered disclosed, as suggested in Loigman, supra, 102 N.J. at 113, 505 A.2d 958.[9]
Plaintiffs claim that the trial judge improperly declined to review some thirty documents listed in the Vaughn index and suggest that we review them and, in any event, now order their release.
*589 The record does not clearly reflect why the trial judge did not review in camera all the documents listed in the Vaughn index, and our review of the index compels us to conclude that such a review is required.[10] However, that review should initially be conducted by the trial judge. See South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 498, 591 A.2d 921; Loigman v. Kimmelman, supra; Philadelphia Newspapers v. Dept. of Law, supra, 232 N.J. Super. at 466, 557 A.2d 688; Red Bank Register v. Board of Educ., supra, 206 N.J. Super. at 10-11, 501 A.2d 985. See also South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 498, 591 A.2d 921 (remanding for further proceedings). And, as noted in Loigman with respect to the disclosure of law enforcement records, an in camera review may reveal that "by further excision or deletion of privileged and confidential materials, [the court should] appropriately order the materials released." 102 N.J. at 113, 505 A.2d 958. Because of the in camera nature of the review, the custodian, if necessary or appropriate, can explain ex parte the significance of documents and the impact their disclosure might have and the trial judge can state his reasons for non-disclosure. If the reasons require reference to confidential material or involve reference to documents which should not be disclosed, those reasons can be made part of the record to be sealed for appellate review. See Loigman v. Kimmelman, supra, 102 N.J. at 113, 505 A.2d 958. Cf. State v. Milligan, supra, 71 N.J. at 393, 365 A.2d 914; State v. Garcia, 255 N.J. Super. 459, 605 A.2d 728 (App.Div. 1992); State v. Zenguis, 251 N.J. Super. 358, 364-66, 598 A.2d 245 (App.Div. 1991); State v. Crudup, 176 N.J. Super. 215, 422 A.2d 790 (App.Div. 1980). In any event, a record can be made before a *590 trial judge which cannot be initially developed in this court. See Philadelphia Newspapers v. Dept. of Law, supra.
It is impossible for us to determine which documents presented to us were subject to the disclosure order and which were not.[11] The City has delivered to us a copy of the Vaughn index and apparently all the documents listed thereon but we have no way of knowing which of those documents were reviewed by the judge and, as already noted, his February 28, 1991 order merely provides for disclosure of "all documents excluding any Vaughn index, which the City of Camden and the Police Department of the City of Camden were ordered to submit for in camera review...." No order reflects, by reference to an inventory or index number or to the document itself in any way, the documents reviewed in camera or to be disclosed. In order to have appellate review as contemplated by Loigman, all material reviewed in camera should be marked and, in any event, maintained under seal by the court, and the court's order should indicate, in some fashion, the material it reviewed and the documents disclosed as well as those not disclosed. The order can, for example, refer to Vaughn index number without being more specific.[12]
*591 Given the need for inspection and review of all items listed on the Vaughn index for purposes of deciding the common-law right to access, we remand for further proceedings. Moreover, as we do not read the record to include a determination as to these documents under the RKL, the trial court shall expressly state its conclusions under the RKL if common-law access is denied. In any event, the documents should be appropriately marked, sealed and preserved for appellate review in case of further appeal.

IV.
The Medical Examiner asserts that, although the autopsy report qualifies under both the common law and the RKL as a public record, the trial court erred in ordering its disclosure. Of course, if disclosure is required under the statute, as plaintiffs claim, the common-law issue need not be pursued. Home News Pub. v. Dept. of Health, 239 N.J. Super. 172, 180, 570 A.2d 1267 (App.Div. 1990). The Medical Examiner claims that the autopsy is exempted from the RKL by virtue of an executive order.
Under the RKL, the Governor has express authority to except records from the general requirement of public disclosure. See N.J.S.A. 47:1A-2. By Executive Order No. 9 Governor Hughes excepted from disclosure under the RKL records of "morbidity, mortality and reportable diseases," as well as "[f]ingerprint cards, plates and photographs and other similar criminal investigation records" of State or local governmental agencies. Executive Order No. 9.3(c), (e), N.J. Laws (1963) at 1157. Governor Kean's Executive Order No. 123 modified section 9.3(e) of Executive Order No. 9 by permitting disclosure of "[f]ingerprint cards, plates and photographs and similar criminal investigation records" as to death of a "victim" unless release would "jeopardize the safety of any person or any investigation in progress" or would "be contrary to existing law *592 or court rule." Executive Order No. 123.2(a)(ii), N.J. Laws (1985) at 2292.[13]
Executive Order No. 123 dealing with photographs and "criminal investigation records" does not appear to bar release of death records once an investigation is over and the case is closed.[14]See Asbury Park Press v. Seaside Heights, supra, 246 N.J. Super. at 67, 586 A.2d 870. Similarly, the exception for morbidity and mortality records in Executive Order No. 9 does not specifically refer to autopsy reports and seems directed to a compilation of death statistics and not to medical and forensic reports of examinations of specific individuals, and in Home News Pub. v. Dept. of Health, supra, 239 N.J. Super. at 180, 570 A.2d 1267, we held that under the RKL death certificates must be "available for inspection by any citizen, including a newspaper reporter, who may also copy them...." In any event, given the clear "public policy" embodied in N.J.S.A. 47:1A-1, we cannot read the Executive Orders, in the absence of more specific language, to provide an exception to the requirements otherwise embodied in the RKL. See Home News Pub. Co. v. State, supra, 224 N.J. Super. at 11, 539 A.2d 736.
An exception to access under RKL may also be established by statute and regulation, see N.J.S.A. 47:1A-2, and the Medical Examiner points out that N.J.S.A. 52:17B-92 provides that when there is a request for an autopsy report, "[a] reasonable fee may be charged to private persons for copies of such records and upon such conditions as may be prescribed by the State Medical Examiner; provided, however, that no person with a proper interest in such records shall be denied access thereto." N.J.S.A. 52:17B-92. See also N.J.S.A. 52:17B-88, *593 52:17B-88.2, 52:17B-88.3. The Medical Examiner claims, therefore, that only a "person with a proper interest," who cannot be denied an autopsy report, may obtain a copy because the State Medical Examiner has adopted regulations which define who has a "proper interest" in access to autopsy reports. He claims that under the regulations, unless the State Medical Examiner otherwise finds a "proper interest," an autopsy report can be released only to "next of kin of the decedent, the decedent's legal representative," parties to litigation arising out of the death, or to "any person upon written authority of the decedent's next of kin or legal representative...." N.J.A.C. 13:49-3.1(a) and (c).[15] The question then becomes whether the regulation, limiting or detailing who may have a copy of the autopsy report, is inconsistent with N.J.S.A. 52:17B-92 which provides only that access by some persons can be made subject to conditions. Plaintiffs attack the regulations as ultra vires.
In Accident Index Bureau, Inc. v. Hughes, 46 N.J. 160, 215 A.2d 529 (1965), the Supreme Court invalidated a regulation of the Commissioner of Labor and Industry which barred access to workers' compensation records "if the purpose of the inspection or copying is to provide employers with information concerning prospective employees." Id. at 163, 215 A.2d 529. The Court stated that the regulation was too broad to achieve its purpose, but noted that even a narrowly-drawn regulation tailored to advance legitimate objectives of the workers' compensation law might contravene the right of access granted under the RKL, a question on which the Court "reserved" decision. Id. at 166, 215 A.2d 529.
Our courts have held that the power of an administrative agency to limit RKL access is restricted to reasonable time and place restrictions and that they can deny access "only when necessary for the protection of the public interest." Irval *594 Realty v. Bd. of Pub. Util. Commissioners, supra, 61 N.J. at 374, 294 A.2d 425; Home News Pub. Co. v. State, supra, 224 N.J. Super. at 15, 539 A.2d 736. See also Techniscan v. Passaic Valley Water, supra, 113 N.J. at 237, 549 A.2d 1249 (utility's legitimate concern with unlimited access can be met by "reasonable time and place restrictions on the terms of access"); Twiss v. State, Dept. of Treasury, 239 N.J. Super. 342, 352, 571 A.2d 333 (App.Div. 1990), rev'd other grounds, 124 N.J. 461, 591 A.2d 913 (1991); De Lia v. Kiernan, 119 N.J. Super. 581, 585, 293 A.2d 197 (App.Div. 1972)
The regulation here may impose the kind of "personal interest" requirement which the RKL was designed to eliminate. See McClain v. College Hosp., supra, 99 N.J. at 354, 492 A.2d 991. However, we do not definitively decide the impact of the regulation because the regulation by itself cannot control the common-law disposition. See Irval Realty v. Bd. of Pub. Util. Commissioners, supra, 61 N.J. at 375, 294 A.2d 425; see also Loigman v. Kimmelman, supra. Neither the RKL nor any other statute prohibits disclosure of the autopsy report under common-law principles and we do not believe that a regulation of an Executive Branch agency can do so where legislation does not. We do not suggest that regulations cannot be considered in the common-law disposition. To the contrary, a legitimate need for confidentiality and the policy behind a regulation can be considered as a factor in determining the common-law balance. Cf. Loigman v. Kimmelman, supra. Nevertheless, we are satisfied that release of the autopsy report was appropriate under the common-law balancing test in these particular circumstances involving a closed investigation of a death occurring while the decedent was in custody of the police. Since our statutes, including N.J.S.A. 52:17B-92, do not clearly bar, or provide regulatory authority to bar, all public access to an autopsy report, and since New Jersey favors access to public documents while limiting regulatory restrictions on access to that necessary in the public interest, we cannot read any regulatory scheme as preventing common-law *595 disclosure in this case where the balance sustains such access.[16] The cases relied upon by the Medical Examiner deciding disclosure questions under the wording of out-of-state statutes, while helpful in considering common-law values, are not controlling. See McClain v. College Hospital, supra, 99 N.J. at 356, 492 A.2d 991.
Here, the trial court reviewed the autopsy report and ordered its release. We have read it as well. In the absence of any ongoing homicide investigation, and indeed precisely because the investigation was closed without the filing of charges, we agree with the trial judge's conclusion that the public interest would be served by release of the autopsy report.

V.
In their cross-appeal plaintiffs assert that the court erred by refusing to release the autopsy photographs. Again, we conclude that the judge's determination is unassailable. He considered the Loigman criteria and concluded that the photographs should not be released. Whether or not the photos can be said to be inflammatory, we note that there is no claim of incompetency, conspiracy or "cover-up" by the Medical Examiner. Hence, there is nothing the photos can reveal which can be used to challenge the veracity of the report. If, after review of the report and the other materials plaintiffs may receive, they can make an additional showing of need for the photos, plaintiffs may reapply to the trial judge.
Because disclosure of the photos is not at this juncture appropriate under the common-law, we must review the question under the RKL because, as noted before, there is an *596 absolute right under that statute to access to a public document unless there is a specific exception authorized by the statute.
While the autopsy is a "public record" under the RKL, autopsy photographs are not. Executive Order No. 123 of 1985 expressly excepts any "photographs" which are "required to be made, maintained or kept by any State or local government agency" from the definition of public records under the RKL. See N.J.S.A. 47:1A-2; Executive Order No. 123.2(a), supra, N.J. Laws (1985) at 2292. There can be no doubt that an autopsy photo is included in the Executive Order's RKL exception because of the reference to "photographs and similar criminal investigation records" and the need for autopsies in criminal investigation. See N.J.S.A. 52:17B-88. Moreover, N.J.S.A. 52:17B-88 requires the Medical Examiner to place his autopsy "findings [in] writing," but the statute does not require or mandate photographs. Thus, it appears the photographs are not "required by law to be made" and, thus, are not "public records" subject to release under the RKL.
Contrary to plaintiffs' contention we find nothing in the First Amendment cases which requires disclosure of the information that it seeks. While "the press acts as the eyes and ears of the public," South Jersey Pub. Co. v. N.J. Expressway, supra, 124 N.J. at 496, 591 A.2d 921, and cannot be prevented from publishing what information it acquires, it is not entitled to obtain information to which there is no right of public access. See e.g., Houchins v. KQED, Inc. 438 U.S. 1, 9-12, 16, 98 S.Ct. 2588, 2593-95, 2597, 57 L.Ed.2d 553, 561-562, 565-566 (1978) (constituting plurality). See also e.g., Capital Cities Media, Inc. v. Chester, 797 F.2d 1164, 1174-1176 (3d Cir.1986). This issue does not involve the closure of proceedings or non-disclosure of information the press or public otherwise has the right to obtain. Hence, the non-disclosure of the autopsy photographs presents no constitutional violation.

*597 VI.
Two other points collateral to the principal issues under review require brief comment.
Both Camden and the Medical Examiner contend the court abused its discretion in granting plaintiffs an enlargement of time within which to file the complaint. A complaint in lieu of prerogative writs must be filed not later than 45 days after "the accrual of the right to the review, hearing or relief claimed" except that the court "may enlarge the period of time ... where it is manifest that the interest of justice so requires." R. 4:69-6(a) and (c). The trial judge here enlarged the time period otherwise applicable for filing the complaint although nowhere in his oral opinion did he detail when the right to relief accrued, thus triggering the 45 day time frame which he was enlarging. In any event, we find no abuse of discretion. Another request for the same material could be made at any time by another party who could file on similar grounds a complaint in lieu of prerogative writs in a timely fashion. Unlike the traditional case involving a prerogative writ challenge to the denial of a permit or application, this case involves a claim of public right to access as opposed to private interests, cf. Reilly v. Brice, 109 N.J. 555, 558-559, 538 A.2d 362 (1988), and we could not uphold a dismissal on grounds that the complaint was untimely under R. 4:69-6.
Finally, plaintiffs argue that they are entitled to fees and costs under the RKL. N.J.S.A. 47:1A-4 mandates that a plaintiff who successfully obtains an order from the Superior Court under the RKL "shall be entitled to taxed costs and may be awarded a reasonable attorney's fee not to exceed $500." The same statute also provides that "[a] defendant who prevails in preventing the issuance of such an order shall be entitled to taxed costs." Where a party prevails on a claim for which fees and costs may be awarded, he may collect at least that portion *598 for which the statute and, therefore, R. 4:42-9 permits.[17]See Specialized Med. Sys. v. Lemmerling, 252 N.J. Super. 180, 599 A.2d 578 (App.Div. 1991), certif. granted 127 N.J. 565, 606 A.2d 375 (1992). See also African Council v. Hadge, 255 N.J. Super. 4, 604 A.2d 604 (App.Div. 1992). However, issues under the RKL may never be addressed with respect to documents released under the common law. This is not the occasion to decide if the RKL can be interpreted to permit fee and cost recovery thereunder when the relief requested under the RKL is granted under another theory. See Hadge, supra. See also Urban League v. Mayor and Council, 115 N.J. 536, 559 A.2d 1369 (1989). When the remand proceedings have been completed and all disclosure has been given, plaintiffs can renew their application for fees and costs and develop these issues.

VII.
We affirm the order disclosing the autopsy report and denying disclosure of the autopsy photographs. We remand the matter to the Law Division for purposes of deciding the disclosure issues relating to the City of Camden police files under the Right to Know Law and the common-law. A new judge shall conduct an in camera review of all documents listed on the Vaughn index, shall have all the documents marked, and shall indicate in his or her order which documents shall be subject to disclosure and which shall not. All documents shall be preserved under seal pending any further appellate review. We do not retain jurisdiction.
NOTES
[1] Defendants, the City of Camden, the Police Department of the City of Camden and the Custodian of Records for the Police Department of the City of Camden are collectively called "City" or "Camden". "Medical Examiner" refers to defendants the Medical Examiner of the County of Camden and the State Medical Examiner. Relief is no longer sought from defendant State Medical Examiner because he has apparently satisfied plaintiffs that all records they seek are possessed exclusively by the County Medical Examiner.
[2] It is unclear whether the written police regulations, policies and procedures were disclosed. No issue is addressed to us on that subject.
[3] N.J.S.A. 40:48-6 provides that "all books, records, data, accounts, maps and papers relating to the government or the conduct of municipal business and matters shall be kept" in a place secure against fire and theft. The City code here provides:

All the books, maps, papers, accounts, statements, vouchers and other documents whatsoever acquired or produced in any city department shall be carefully and conveniently filed, kept and preserved, shall be and remain the sole property of the city and shall not, at any time, be removed from the offices of such department, except when required for use in the official business of the city, and shall then be returned to such office without delay. [City of Camden, N.J., Code §§ 5-97].
[4] We note that the "exception" clause of N.J.S.A. 47:1A-2 does not include municipal ordinances even with respect to records required by municipalities to be made, maintained or kept.
[5] We will discuss the autopsy photo separately in this regard. We would, of course, have to evaluate the RKL claim in detail if it would generate more disclosure than under the common law due to the RKL's unlimited right of access without consideration of the standing and balancing issues.
[6] Similar arguments have been made about disclosure of grand jury transcripts to defendants as well as to victims of crimes and third parties. Independent of defendant's right to discovery in a criminal case, R. 3:13-3(a), our case law has with increasing frequency expanded the right of victims and some other persons with particular interest to gain access to this material after completion of the criminal case. See, e.g., State v. Doliner, 96 N.J. 236, 475 A.2d 552 (1984); Caiazza v. Bally Mfg. Inc., 210 N.J. Super. 7, 509 A.2d 187 (App.Div. 1986); State v. CPS Chemical Co. Inc., 198 N.J. Super. 236, 486 A.2d 944 (App.Div. 1985), leave to appeal denied, 105 N.J. 502, 523 A.2d 151 (1985); Doe v. Klein, 143 N.J. Super. 134, 362 A.2d 1204 (App.Div. 1976); Viruet v. Sylvester, 131 N.J. Super. 599, 331 A.2d 286 (App.Div. 1975), certif. den., 68 N.J. 138, 343 A.2d 426 (1975).
[7] As noted in Loigman, "[r]ecognizing ... that a detailed Vaughn index may in some cases enable astute parties to divine with great accuracy the names of confidential informers, ... and the like, the procedure contemplates, in rare cases, an in camera submission of the Vaughn index." 102 N.J. at 111, 505 A.2d 958.
[8] As suggested in Loigman, supra, 102 N.J. at 113, 505 A.2d 958, the judge further ordered that the disclosed documents were to be "seal[ed]" and withheld from disclosure to plaintiffs "pending an appeal."
[9] We also note that our Supreme Court has looked to decisions under the federal Freedom of Information Act and other statutes to decide common-law values. See McClain v. College Hosp., supra, 99 N.J. at 356, 492 A.2d 991. In that context we note cases requiring disclosure of similar information concerning the shooting death of a prisoner in police custody once the investigation is closed (and any criminal proceeding concluded). See Evening News Ass'n v. City of Troy, 417 Mich. 481, 339 N.W.2d 421, 438 (Mich. 1983); Westchester Rockland, etc. v. Mosczydlowski, 58 A.D.2d 234, 396 N.Y.S.2d 857 (App.Div. 1977).
[10] We have been supplied with the Vaughn index and apparently all underlying documents listed thereon. We see nothing listed therein which "may be so highly confidential that its disclosure to anyone, including a judge, will irreparably hamper" the procedures or proper functioning of the Camden Police Department. Loigman v. Kimmelman, supra, 102 N.J. at 109, 505 A.2d 958.
[11] We recognize that the trial judge's order of February 28, 1991 also required the City to make "an inventory of all documents corresponding by number to and appearing on the Vaughn index which the City of Camden and the Police Department of the City of Camden were ordered to submit to this court for in camera review, but listing only the title and form number of each such document...." That inventory was not presented to us, apparently because it was given to plaintiffs and not sealed. The order does not require an indication on the inventory of which items on the Vaughn index were reviewed by the court and which were not.
[12] It may be that the trial judge sealed the documents he reviewed, all of which he released, but he has now retired, and while plaintiffs cannot be faulted or penalized for the form of the material we have received from the City, we do not pursue this subject further because a new judge will have to, in any event, conduct the further in camera review on remand. And in so doing the new judge should ascertain and review the documents the original trial judge saw.
[13] The revised Executive Order actually provides an exception to the exception under the RKL. There are different provisions and considerations based on whether an "arrest has been made."
[14] We will assume that the Executive Order covers investigation records of all law enforcement authorities relating to investigations of all deaths, whether homicide or otherwise.
[15] There is an exception pending a "continuing criminal investigation." N.J.A.C. 13:49-3.1.
[16] That is not to say that the privacy interest embodied in the statutory scheme regarding autopsies should not be considered under the balancing test. See N.J.S.A. 52:17B-86, -88.1 et seq. To the contrary, if information in the report reveals personal information about the decedent, irrelevant to the purposes of the disclosure request or common-law policy, it should be redacted if the report is otherwise discoverable under the common-law.
[17] If there is a covered and non-covered basis, the prevailing party may not be able to isolate the services but he should be required to do so or show why he cannot. We did not intend to suggest otherwise in Lemmerling.