275 N.J. Super. 465 (1994)
646 A.2d 510
&utrif; 510 SOUTHERN NEW JERSEY NEWSPAPERS, INC., PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF MOUNT LAUREL, THE POLICE DEPARTMENT OF THE TOWNSHIP OF MOUNT LAUREL AND THE CUSTODIAN OF RECORDS FOR THE POLICE DEPARTMENT OF THE TOWNSHIP OF MOUNT LAUREL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1994.
Decided August 18, 1994.
*468 Before Judges SHEBELL, LONG and LANDAU.
John C. Connell argued the cause for appellant (Archer & Greiner, attorneys; Mr. Connell, on the brief).
*469 Michael L. Mouber argued the cause for respondents.
Jean H. Culp, Assistant Solicitor of Burlington County, amicus curiae, argued the cause for Burlington County Adjuster.
John DiCicco, Senior Deputy Attorney General, argued the cause as amicus curiae.
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by plaintiff Southern New Jersey Newspapers, Inc. (plaintiff) publisher of the Camden Courier Post, from the grant of summary judgment on the cross motion of defendants, the Township of Mount Laurel, the Police Department of the Township of Mount Laurel, and the Custodian of Records for the Police Department of the Township of Mount Laurel (collectively hereafter, the Township) and from the denial of plaintiff's motion for summary judgment in its action which sought access to certain gun permit files maintained by the Township. The Burlington County Solicitor appeared below and has participated in the appeal as amicus curiae on behalf of the Burlington County Adjuster, with particular reference to the Adjuster's interest in confidentiality of certain mental health records under N.J.S.A. 30:4-24.3. Additionally, the Burlington County Prosecutor was permitted to participate in the trial court, and the Attorney General has participated as amicus curiae on the appeal.
Our review leads to affirmance of the grant of summary judgment to the Township and the denial of plaintiff's motion. However, we conditionally modify the summary judgment to provide that it is partial, in order to permit plaintiff to amend its pleadings consistent with the limitations set forth below.

History of the Case
Plaintiff's complaint in lieu of prerogative writs sought access to, and permission to copy, records of permits for the sale and purchase of firearms, asserting that such records were subject to *470 the Right to Know Law, N.J.S.A. 47:1A-1 to -4. The complaint also asserted common law rights, and a constitutional right under the First Amendment of the United States Constitution and the New Jersey Constitution, Article I, Paragraph 6. Plaintiff did not initially request the background information required by the Township in connection with issuance of handgun purchase permits and firearms purchaser identification cards.
We note that information respecting permits to carry handguns, N.J.S.A. 2C:58-4, has not been requested. The issues here raised involve only permits for purchase of handguns, N.J.S.A. 2C:58-3a, and firearms purchaser identification cards, N.J.S.A. 2C:58-3b. The identification cards are issued with respect to acquisition and maintenance of rifles and shotguns.
During the course of discovery, the Township advised plaintiff of the various back-up documents which are solicited and maintained in connection with issuance of the handgun purchaser permits and firearms purchaser identification cards, consistent with the requirements set forth in N.J.S.A. 2C:58-3c[1]. These records included forms designated as follows:

*471 1. Voluntary Form of Register of Firearms  S.P. 650
2. Instructions for a Duplicate Firearms I.D. Card
3. Application for a Duplicate Firearms Purchaser Identification Card  STS-3
4. Instructions for Firearms Applicant
5. Reference Form
6. Application for Permit to Carry Handgun  SP642
7. Consent for Mental Health Records Search  STS-1
8. Application to Purchase Handgun
9. Application for Firearms Purchaser Identification Card  STS-33
10. Firearms Applicant Investigation Report
By the time the summary judgment motions were considered, it was recognized that plaintiff sought not only copies of the purchase permits and firearms purchaser identification cards which had been issued during a given period, as requested in its complaint, but also by discovery or otherwise, all of the completed statutorily required background information including the application, as well as details of the issued permits, firearms purchaser identification cards, copies of reference letters, and investigative conclusions.
The information required from applicants is particularized in N.J.S.A. 2C:58-3e[2]. The Legislature has specifically precluded *472 the addition of any conditions or requirements to those statutorily enumerated. N.J.S.A. 2C:58-3f.
During the hearing on the motions, held November 20, 1991, it became known that the Superintendent of the Division of State Police (Superintendent) had proposed in the New Jersey Register *473 for August 5, 1991, readoption of regulations governing permits to purchase handguns and firearms purchaser identification cards, as well as certain amendments adopted effective November 15, 1991.
As then amended, N.J.A.C. 13:54-1.15 provided that background investigations conducted by chiefs of police or the Superintendent before issuing such permits and firearms purchaser identification cards are not public records and should not be disclosed to any person, including the applicant, except upon order of a court of competent jurisdiction. The rationale explained upon proposing adoption of this Rule was that such background investigations contained sensitive information often revealed to law enforcement authorities on the condition that it not be disseminated. In addition, the rationale included reference to protection of privacy rights of the applicant because background investigations include such subjects as prior convictions, medical and mental disabilities, alcoholism, drug addiction, and "other matters that ought not be disclosed in public forum absent a compelling need."
When these regulatory changes became known, the motion judge requested supplemental filings from the parties, addressed to the issue of the Law Division's jurisdiction to decide a matter which might hinge on validity of an agency rule. See R. 2:2-3(a)(2).
We note the presence of a substantial dispute among the various participants in this appeal respecting whether validity of the regulation was being challenged or whether the court was merely called upon to interpret the regulation. The Attorney General, as amicus curiae, contends that plaintiff never directly contested the validity of N.J.A.C. 13:54-1.15, and is foreclosed from raising the issue on appeal from a judgment of the Law Division. It is evident, however, that this matter involves issues of substantial public interest. As the regulation was amended several times during the pendency of the litigation, this action and the evolving regulation are inextricably intertwined. Notwithstanding plaintiff's failure to address formally adoption of the regulation by direct appeal, an appeal which undoubtedly would *474 have been consolidated with this case, we will consider the validity of N.J.A.C. 13:54-1.15, as amended. See Neider v. Royal Indemnity, 62 N.J. 229, 234, 300 A.2d 142 (1973). This case is readily distinguished from Bergen Pines Hosp. v. Dept. of Human Services, 96 N.J. 456, 476 A.2d 784 (1984) in that the principal objection to validity of the Superintendent's regulation is the question of legislatively delegated authority to adopt it. See Cumberland Farms, Inc. v. Moffett, 218 N.J. Super. 331, 337 n. 2, 527 A.2d 913 (App.Div. 1987).

The Law Division Opinions
In his opinion rendered on March 25, 1992 and implemented by order of April 5, 1992, Judge Wells granted summary judgment to the Township and denied summary judgment to plaintiff, holding that neither the background files nor the permits could be released to plaintiff despite his conclusion that, prima facie, all of the documents, including background materials and permits, were Right to Know public records within the definition of N.J.S.A. 47:1A-2. At the time of the April, 1992 order, N.J.A.C. 13:54-1.15 purported to exempt from public record status only the background information required by statute. See N.J.S.A. 47:1A-2; 24 N.J.R. 3022-23.
In denying access to the background information, the judge relied primarily upon N.J.A.C. 13:54-1.15, the regulation adopted by the Superintendent. As to the purchase permits and identification cards, however, and as an additional reason respecting the background documents, the judge utilized the common law public records balancing test[3] to deny access, notwithstanding his conclusion *475 that, but for the regulation, the permits and identification cards records would be Right to Know documents. The judge also found that permitting access to the background information would have a chilling effect upon the investigative process, adversely impact on compliance with the regulatory scheme, create a potential for black market in the sale of firearms, and deter qualified persons from exercising the right to purchase firearms. Plaintiff's constitutional claims of right to access were rejected. Judge Wells also noted the long history of affording confidential status to such documents. He therefore concluded that the public interest balance weighed strongly in favor of the Township.
As there were no material factual issues in dispute, Judge Wells entered an order on April 15, 1992, granting the Township's motion for summary judgment and denying the plaintiff's motion.
Plaintiff appealed in timely fashion, and filed a brief in September 1992. However, in the interim, N.J.A.C. 13:54-1.15 was again proposed for amendment by the Superintendent, specifically responding to Judge Wells' holding that the handgun purchaser permits and firearms purchaser identification cards were not covered by the amended version of N.J.A.C. 13:54-1.15 in effect as of April 15, 1992.
No objections were received to the proposed further amendment, published at 24 N.J.R. 3022 and 24 N.J.R. 4068. The rule was adopted on October 9, 1992, effective November 2, 1992. In compliance with our request made during oral argument, the Attorney General has provided documentation confirming that the legislature was provided with each of the proposed rule amendments for the 60 day review period required by the Administrative Procedure Act. N.J.S.A. 52:14B-1, 52:14B-4.1, 52:14B-4.3. Under *476 N.J.S.A. 52:14B-4.3, a rule "shall be deemed approved" absent disapproval by legislative resolution during the 60-day period.
Shortly before adoption of the latest rule amendment, which added purchase permits and firearms identification cards to the list of documents declared not to be public records, we granted the Township's motion for a limited remand to permit Judge Wells to reconsider his earlier opinion in light of the amendment. Judge Wells afforded all parties an opportunity to comment, and then filed a supplemental written opinion on December 14, 1992. The opinion concluded that the newly amended regulation had removed firearms permits and I.D. cards from the ambit of "public records" under N.J.S.A. 47:1A-2, and that this was consistent with the public interest determinations previously made.
N.J.S.A. 47:1A-2 provides an exception to the general rule that all records required by law to be made, maintained or kept on file by public bodies shall be deemed public records under the Right to Know Law. The statute prefaces the words "all records" with the words "[e]xcept as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor". Thus, if the Superintendent's regulation was "promulgated under the authority of any statute", records encompassed therein would not be public records under the Right to Know Law. Additionally, records declared not to be public by an applicable statute, executive order or court rule would not be deemed public records covered by the Right to Know Law.
As noted above, Judge Wells' opinion on remand reaffirmed his earlier determination which based denial of access to the materials sought by plaintiff upon common law right of access principles requiring the balance of competing public interests. See supra, n. 3. In reaching his conclusions in both opinions, the judge relied heavily upon the statements contained in the Superintendent's *477 published proposed amendments to the regulation. See 24 N.J.R. 3022.
The proposal summary states that "[t]his amendment reaffirms the long standing policy of the State Police and municipal police departments that such documents are not public records. The State Police and municipal police departments may, as they have in the past, properly continue to withhold such documentation from public disclosure." 24 N.J.R. 3022. The social impact paragraph states:
The proposed amendment will serve to protect the privacy of persons who obtain firearms by virtue of licenses, firearms identification cards, permits and registrations. Their names and addresses will not be subject to public disclosure absent legitimate need or legal requirement. More importantly, however, exempting permits, licenses, firearms identification cards and registrations from being classified as public records will deny the criminal elements of our society the opportunity of obtaining "shopping lists" of names and addresses of persons who own firearms. As a result, these persons will not be targets for burglaries or thefts. In 1991 and 1992, the total number of firearms reported stolen in this State was approximately 2,800. Should the names and addresses of persons who obtain permits, licenses, firearms identification cards and registrations now be made public, that number could dramatically increase. The dangers inherent in such publication are not only applicable to those who may be victimized by burglaries and/or thefts, but are equally shared by the members of the public at large, who could also be victimized by persons who illegally obtain firearms from their rightful owners.
[24 N.J.R. 3022 (emphasis in original)].
Plaintiff contests the validity of the amended regulation, particularly whether the Superintendent was delegated sufficient statutory authority by the Legislature to promulgate a regulation exempting all of the documents in question from status as public records under the Right to Know Law. Plaintiff also argues that it has an essential interest in asserting common law right of access to all of the records which outweighs any public interests in confidentiality, and that it has a constitutional right to access.
Noting the absence of dispute as to any material issue of fact, we affirm the judgment under review, although we reach that conclusion for reasons which vary in some respects from those expressed by the motion judge. For reasons set forth below, however, we conditionally modify the summary judgment to provide that it is partial.

*478 Right to Know Documents

If all of the records sought were statutory Right to Know documents, plaintiff and every citizen of the State would have an absolute right to access, barring a statutorily permitted exception. Under the Right to Know Law, there is no standing or particular interest requirement. See Techniscan v. Passaic Valley Water, 113 N.J. 233, 235-236, 549 A.2d 1249 (1988); Loigman v. Kimmelman, 102 N.J. 98, 101, 505 A.2d 958 (1986).
Judge Wells determined that the "entire process", beginning with the application form and concluding with the issuance of the firearms permits and identification cards as required by law, was reasonably necessary to implementation of the gun control statutes. In consequence, he found that all materials encompassed by the process were Right to Know records. It has been held, however, that the Right to Know definition of a public record should not be expanded by judicial interpretation, Nero v. Hyland, 76 N.J. 213, 220-21, 386 A.2d 846 (1978), and that only documents required to be made, maintained or kept on file should be encompassed within the Right to Know definition of public record. Home News Pub. Co. v. State, 224 N.J. Super. 7, 11, 539 A.2d 736 (App.Div. 1988). A party seeking disclosure of a specific document must identify the particular statute or other legal mandate which requires that the document must be made or maintained before it will be deemed a Right to Know record, pursuant to N.J.S.A. 47:1A-2. See Shuttleworth v. City of Camden, 258 N.J. Super. 573, 580-81, 610 A.2d 903 (App.Div.), certif. denied, 133 N.J. 429, 627 A.2d 1135 (1992).
Utilizing these standards as a beginning point, not all of the documents encompassed within the preliminary Right to Know evaluation by the motion judge were required by law to be made or maintained. As we read the firearms control legislation, and the Superintendent's regulation, the following documents are specifically required to be made or maintained: (1) application to purchase handguns, N.J.S.A. 2C:58-3e; N.J.A.C. 13:54-1.4; (2) application for firearms purchaser identification cards, N.J.S.A. *479 2C:58-3e; N.J.A.C. 13:54-1.4 and -1.11; (3) firearms purchaser identification cards, N.J.S.A. 2C:58-3e; N.J.A.C. 13:54-1.4 and -1.11); (4) permits to purchase handguns and forms of registers, N.J.S.A. 2C:58-3e; N.J.A.C. 13:54-1.4 and -1.7; and (5) consents for mental health records N.J.S.A. 2C:58-3e, N.J.A.C. 13:54-1.4. It does not appear, however, that the Mt. Laurel Police Department reference letter, and responses thereto, nor the Mt. Laurel Police Department firearms applicant investigation report are required to be maintained or made thereunder. There is no applicable municipal ordinance. Therefore, before considering whether any or all of the documents requested are otherwise specifically exempted from Right to Know status, we conclude that the investigation reports, reference letters and responses are not specifically required to be made or maintained and should not have been included within the category of statutory Right to Know Law documents.
Of course, these materials remain common law public records. Thus, access to them must be considered, together with all of the records in dispute, under common law principles, as well as under plaintiff's constitutional arguments.
One other category of the records requested by plaintiff warrants separate analysis. As amicus curiae, the Burlington County Adjuster urges that mental health records are insulated by N.J.S.A. 30:4-24.3, which requires confidential treatment of "[a]ll certificates, applications, records, and reports made pursuant to the provisions of this Title [30] and directly or indirectly identifying any individual presently or formerly receiving services in a non-correctional institution". The statute is subject to the following exceptions:
(1) the individual identified or his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent; or
(2) disclosure may be necessary to carry out any of the provisions of this act or of article 9 of chapter 82 of Title 2A of the New Jersey Statutes;[4] or

*480 (3) a court may direct, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest.
[N.J.S.A. 30:4-24.3].
Under N.J.S.A. 2C:58-3e, and solely "[f]or the purpose of complying with this subsection", an applicant must "waive any statutory or other right of confidentiality relating to institutional confinement." Consistent with the limitations of this subsection, and the thrust of N.J.S.A. 30:4-24.3, the Superintendent has promulgated form STS-1, "Consent for Mental Health Records Search," for completion by firearms permit applicants. It contains a consent provision which states:
I, ____, am aware of my rights under N.J.S.A. 30:4-24.3, and consent to disclose [sic] of my mental health records to the Chief of Police, Superintendent of State Police or their designees for the purpose of verifying my firearms permit application and my fitness to own a firearm under N.J.S.A. 2C:58-3.
This Consent Form is forwarded to the applicable County Adjuster who must state whether or not the "mental records" maintained in that office show that the applicant has a record of admission or commitment to a mental institution. The form of consent does not, however, agree to disclosure of this otherwise statutorily confidential information to persons other than the cognizant municipal police chief, the Superintendent of State Police, or their designees.
The Adjuster argues that, by reason of N.J.S.A. 30:4-24.3, and the presently contested N.J.A.C. 13:54-1.15, applicants' mental health records are exempted by both statute and regulation from classification as Right to Know records, except upon order of a court "upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest." (quoting N.J.S.A. 30:4-24.3(3)).
The statutory exception requires both a judicial determination of necessity and a finding that disclosure is not contrary to public interest. These dual conditions have not been met. Given the strong legislative policy of N.J.S.A. 30:4-24.3, the policy considerations *481 listed by the Superintendent during the rule-making process, and the judge's common law balancing analysis, the public interest prong clearly has not been satisfied. We agree with the Burlington County Adjuster that the Title 30 statutory prohibition, and the public interest considerations mentioned above, preclude affording broad access to the requested mental health records under New Jersey's common law. See North Jersey Newspapers, supra 127 N.J. at 17, 601 A.2d 693; Nero, supra, 76 N.J. at 223-24, 386 A.2d 846.

Validity of N.J.A.C. 13:54-1.15
We now turn to the question of whether Judge Wells correctly held that the Superintendent had the legislatively conferred authority to adopt N.J.A.C. 13:54-1.15, thus, removing documents such as those requested by plaintiff from the category of Right to Know Law records. In finding such authority, the judge relied, not on any specific delegation of power to declare records confidential, but on the generalized delegation to the Superintendent under N.J.S.A. 2C:58-1 to -16 and N.J.S.A. 2C:39-1 to -15. These are the sections relied upon by the Superintendent in its administrative law promulgation of the proposed regulation. We find no implied or express delegation in those statutes respecting the power to restrict access. However, we take notice of the social impact statement made by the Superintendent, including both privacy considerations and the public safety consideration of avoiding broad accessibility which would render the holders of permits and identification cards targets for burglaries and theft.
Administrative regulations are customarily afforded a rebuttable presumption of validity, and findings of ultra vires action are disfavored. A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't., 90 N.J. 666, 683, 449 A.2d 516 (1982); In re New Jersey Board of Public Utilities, 200 N.J. Super. 544, 557, 491 A.2d 1295 (App.Div. 1985). However, exercise of a power to compel confidentiality is neither expressly nor implicitly contained in the generalized *482 delegation to the Superintendent of responsibility for administration of our gun control laws. The Supreme Court has upheld the constitutionality of gun control legislation and recognized the State's paramount police power interest as compared with "some inconvenience and intrusion into [plaintiffs'] total privacy". Burton v. Sills, 53 N.J. 86, 106, 248 A.2d 521 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969); Weston v. State, 60 N.J. 36, 286 A.2d 43 (1972). The Court signalled no recognition that the legislature had delegated to the Superintendent broad powers to impose a confidentiality screen.
Administrative officers must act only within the bounds of authority delegated by the legislature. See In re Jamesburg High School Closing, 83 N.J. 540, 549-50, 416 A.2d 896 (1980). Where there exists reasonable doubt of the existence of a delegated power, the power is denied. Id., at 549, 416 A.2d 896; A.A. Mastrangelo, Inc., supra, 90 N.J. at 685, 449 A.2d 516; Swede v. City of Clifton, 22 N.J. 303, 312, 125 A.2d 865 (1956). In the absence of clear delegation in the gun control legislation, N.J.S.A. 2C:39-1 to -15.; 2C:58-1 to -16, for the Superintendent to adopt a privacy regulation, we must differ with Judge Wells' recognition of a broadly implied delegated power.
Apart from the considerations mentioned in In re Jamesburg High School Closing, supra, A.A. Mastrangelo, supra, and Swede, supra, the Legislature has specifically required that any regulation which purports to remove material from their status as Right to Know records must be "promulgated under the authority of any statute or executive order of the governor." N.J.S.A. 47:1A-2.
As noted in Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 371, 294 A.2d 425 (1972), N.J.S.A. 47:1A-2 permits the Governor to issue an executive order granting authority to adopt regulations respecting public rights of inspection. Governor Hughes issued such an executive order delegating to the head of each principal department of the executive branch of government the authority to adopt regulations setting forth what records should not be deemed public records under N.J.S.A. 47:1A-2. *483 This Executive Order No. 19, dated September 30, 1963, has been modified and partially rescinded by several governors. See Governor Byrne Exec. Orders No. 11 (1974) and No. 110 (1981); and Governor Kean Exec. Order No. 123 (1985). The current Executive Order remains limited to heads of executive departments of government. The Superintendent is the executive administrative head of the Division of State Police in the Department of Law and Public Safety. N.J.S.A. 52:17B-6 to -8. The Attorney General is the head of that principal department. Neither the legislation nor the governor's Executive Order grants or implies sub-delegation of such an important power to a division head.
We have also weighed, as possibly significant to the limited issue of adequate delegation, the fact that N.J.A.C. 13:54-1.15 was submitted to both houses of the legislature pursuant to N.J.S.A. 52:14B-4.1, and deemed approved because no action was taken to disapprove the rule by resolution, N.J.S.A. 52:14B-4.3. While legislative approval of the proposed regulation is of great significance to the public interest analysis, we are unwilling to afford legislative inaction resulting in "deemer" approval the same weight as an affirmative delegation of power to adopt such regulation. Further, the Supreme Court has stated in Irval Realty, supra, that "the Legislature did not intend that the power of excluding records from the public domain, given to the Governor, and by him delegated to departments in the executive branch of government, should be unlimited. Rather we concur in the view that the power was intended to be exercised only when necessary for the protection of the public interest." Id. 61 N.J. at 374, 294 A.2d 425.
In sum, we differ with the trial judge's holding that the Superintendent was impliedly authorized to adopt N.J.A.C. 13:54-1.15. We agree, however, with his conclusion that a weighing of public interest properly leads to rejection of plaintiff's unduly broad and undifferentiated requests in this case, both as to the records which we have held were improperly characterized as Right to Know records, and as to the material which the Superintendent *484 endeavored to remove from Right to Know status by adoption of the regulation.

Effect of the Public Interest Determination
The trial judge engaged in the balancing required by the common law record access cases, see supra, footnote 3, with respect to all of the information sought. To his analysis, we add our recognition that the public interest evaluation has been confirmed by the two other branches of government. The Superintendent promulgated the confidentiality regulation, resting it on notions of privacy and public safety. The Legislature approved the regulation, thus endorsing its policy although not expressly conferring a power to adopt the regulation.
This public interest evaluation is consistent with the pattern of federal gun regulation. Even the most recent federal legislation in this area continues to impose rigid privacy restrictions. See 18 U.S.C.A., §§ 922(s)(5); 922(s)(6)(B), 922(t)(2), 926.
We think it indisputable that the several branches of New Jersey government have identified a strong public interest supporting limitation of broadly available disclosure of the records sought by plaintiff. In so finding, we have not ignored plaintiff's reference to decisions in other jurisdictions, such as CBS, Inc. v. Block, 42 Cal.3d 646, 230 Cal. Rptr. 362, 725 P.2d 470 (1986) and Kwitny v. McGuire, 102 Misc.2d 124, 422 N.Y.S.2d 867 (Sup.Ct. 1979), affirmed o.b., 53 N.Y.2d 968, 441 N.Y.S.2d 659, 424 N.E.2d 546 (Ct.App. 1981). Kwitny may be distinguished, however, because the applicable New York statute specifically provides that applications for pistol licenses, if granted, shall be public records. Kwitny, supra, 422 N.Y.S.2d at 867. This affords to applicants a statutory notice which disposes of any privacy expectation, and sets forth a specific declaration of New York's different legislative policy. CBS, Inc., supra, deals only with permits to possess concealed weapons, for which a separate balancing of interests not here implicated must be made. Id. 725 P.2d at 471.
Recognition of the strong New Jersey public policy interest identified by the several branches of government does not alone *485 resolve this case as to the documents which continue to retain Right to Know status. A further analysis of the Right to Know Law and its exceptions, must be made. In this instance, we refer, as did the Supreme Court in North Jersey Newspaper v. Passaic County, 127 N.J. 9, 17, 19, 601 A.2d 693 (1992), to N.J.S.A. 2A:84A-27[5]:
No person shall disclose official information of this State or of the United States (a) if disclosure is forbidden by or pursuant to any Act of Congress or of this State; (b) if the judge finds that disclosure of the information in the action will be harmful to the interests of the public.
We believe that the public interests enunciated by the Superintendent in promulgating N.J.A.C. 13:54-1.15, deemed approved by the Legislature, and embodied in the trial judge's findings, fall within the contemplation of N.J.S.A. 2A:84A-27(b), at least as to disclosures as broad and undifferentiated as those sought by plaintiff.
While N.J.S.A. 2A:84A-27 cannot and should not be used as an instrument for judicial cancellation of the access rights of citizens granted under the Right to Know Law, see North Jersey Newspapers, supra, 127 N.J. at 19-20, 601 A.2d 693, conflict between these related provisions can be avoided by affording to the public sufficient knowledge to empower it to reasonably evaluate the performance of public duties, without unnecessary invasions of privacy or risks to public safety. See ibid., at 20, 601 A.2d 693.
Reconciliation of the interests in public oversight expressed in the Right to Know Law, and protection of disclosures harmful to other compelling public interests may be achieved with respect to handgun purchaser permit and firearm identification card information by utilizing properly limited inquiries. Nothing we have said precludes the press from asking the Superintendent or a local police chief whether any handgun purchase permits or firearms purchase identification cards have actually been issued to persons *486 with records of institutional confinement, mental or correctional, or to persons who have responded affirmatively to the questions respecting drug and alcohol dependency, past convictions, or membership in organizations which seek to overthrow the government or deny the individual constitutional rights of others. An affirmative response to such inquiries may then be pursued in a more limited fashion, likely to result in a different balance of the competing public interests, and more easily amenable to devices such as redaction, protective orders, and in camera reviews, which can be judicially tailored to the needs of the individual case, while mindful of public interest considerations. Certain statistical inquiries might also serve the public oversight function without jeopardizing the identified public interests in privacy and public safety.
In the present case plaintiff has not availed itself of the opportunity to make such limited inquiries. We grant leave to amend the pleadings to make requests which are consistent with this opinion. This approach harmonizes with North Jersey Newspapers, supra, 127 N.J. at 17-20, 601 A.2d 693; Loigman, supra, 102 N.J. at 112-113, 505 A.2d 958; and Irval Realty, supra, 61 N.J. at 374, 294 A.2d 425.

Constitutional Right of Access
Finally, we consider plaintiff's assertion of an absolute right of access to the requested documents under the constitutions of the United States and this State. Similar arguments of a constitutional right to access by the press, outside the arena of criminal trials, have generally been rejected in the federal courts. Houchins v. KQED, Inc., 438 U.S. 1, 14, 98 S.Ct. 2588, 2596, 57 L.Ed.2d 553, 564 (1978); Capital Cities Media, Inc. v. Chester, 797 F.2d 1164, 1175 (3rd Cir.1986). See also Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 611, 102 S.Ct. 2613, 2622, 73 L.Ed.2d 248, 260 (1982) (J. O'Connor concurring); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494-495 (1st Cir.1992). The reasoning in Sisler v. Gannett Co., Inc., 104 N.J. 256, 516 A.2d 1083 (1986), is not here applicable. As we stated in Shuttleworth v. City of Camden, supra, 258 N.J. Super. 573, 596, 610 A.2d 903 (1992):

*487 While "the press acts as the eyes and ears of the public," South Jersey Pub. Co. v. N.J. Expressway, supra, 124 N.J. at 496, 591 A.2d 921, and cannot be prevented from publishing what information it acquires, it is not entitled to obtain information to which there is no right of public access. [Citing Houchins v. KQED, Inc., 438 U.S. 1, 9-12, 16, 98 S.Ct. 2588, 2593-95, 2597, 57 L.Ed.2d 553, 561-562, 565-566 (1978) and Capital Cities Media, Inc. v. Chester, 797 F.2d 1164, 1174-1176 (3d Cir. 1986)].
 [Id. 258 N.J. Super. at 596, 610 A.2d 903
 (authorities there cited)].
We also observe that the New Jersey gun control legislation survived attack based upon assertions of unconstitutional violation of privacy because the court found that the relatively small inconvenience and intrusion of privacy was outweighed by public safety considerations. Burton, supra, 53 N.J. at 106, 248 A.2d 521. However, the court considered privacy arguments in the context of existing policy, and not against a pattern of broad public disclosure of all of the private information secured. A similar constitutional challenge was rejected in In re Martin, 90 N.J. 295, 447 A.2d 1290 (1982) with respect to background information required by the Casino Control Commission. The court said:
In light of the extraordinarily broad nature of the release authorization and the potential intimacy of the private information contained in these documents, we hold that in order for the release authorization to pass constitutional muster, the State must undertake adequate precautions to safeguard the material against disclosure to the public once it is in government hands.
[Martin, supra, 90 N.J. at 322, 447 A.2d 1290 (authorities there cited)].
Given reliance by applicants and the persons solicited by investigators for background information upon the State's longstanding policy of privacy, reliance upon the published regulation, and reasonable reliance upon the previous privacy determinations of our courts, we are further satisfied that there is no basis for recognizing a paramount constitutional right for press access in this matter.

Conclusion
We affirm the summary judgment under review and the denial of plaintiff's summary judgment. We do not agree with the trial judge's determination that all documents requested by plaintiff fall within the Right to Know Law but were removed from that *488 category because of the valid adoption of N.J.A.C. 13:54-1.15 impliedly authorized by statute. Nonetheless, the strong public interests plainly identified by the several branches of government, consistent with federal legislative policy, support a judicial determination that: (1) disclosure of the information requested would be harmful to the interests of the public, N.J.S.A. 2A:84A-27(b), and (2) a common law balancing of public interest test requires protection of the requested documents.
A different public interest evaluation, however, would probably be justified should plaintiff elect to amend its pleadings to request only such nonpersonal and specifically targeted inquiries as we have mentioned above, affording to the trial judge the opportunity to impose protections of privacy appropriate to the specific inquiries. In order to afford such opportunity, the summary judgment in favor of defendants shall be regarded as a partial summary judgment if plaintiff elects to file amended pleadings within such limited time as may be afforded by the Law Division on remand.
Affirmed as modified, but remanded for further proceedings consistent with this opinion.
NOTES
[1] N.J.S.A. 2C:58-3c provides:

No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth. No handgun purchase permit or firearms purchaser identification card shall be issued:
(1) To any person who has been convicted of a crime, whether or not armed with or possessing a weapon at the time of such offense;
(2) To any drug dependent person as defined in section 2 of P.L. 1970, c. 226 (C. 24:21-2), to any person who is confined for a mental disorder to a hospital, mental institution or sanitarium, or to any person who is presently an habitual drunkard;
(3) To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, to any person who has ever been confined for a mental disorder, or to any alcoholic unless any of the foregoing persons produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in such a manner that would interfere with or handicap him in the handling of firearms; to any person who knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card;
(4) To any person under the age of 18 years;
(5) To any person where the issuance would not be in the interest of the public health, safety or welfare; or
(6) To any person who is subject to a court order issued pursuant to section 13 of P.L. 1991, c. 261 (C. 2C:25-29) prohibiting the person from possessing any firearm.
[2] N.J.S.A. 2C:58-3e provides:

Applications. Applications for permits to purchase a handgun and for firearms purchaser identification cards shall be in the form prescribed by the superintendent and shall set forth the name, residence, place of business, age, date of birth, occupation, sex and physical description, including distinguishing physical characteristics, if any, of the applicant, and shall state whether the applicant is a citizen, whether he is an alcoholic, habitual drunkard, drug dependent person as defined in section 2 of P.L. 1970, c. 226 (C. 24:21-2), whether he has even been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis, giving the name and location of the institution or hospital and the dates of such confinement or commitment, whether he has been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition, giving the name and location of the doctor, psychiatrist, hospital or institution and the dates of such occurrence, whether he presently or ever has been a member of any organization which advocates or approves the commission of acts of force and violence to overthrow the Government of the United States or of this State, or which seeks to deny others their rights under the Constitution of either the United States or the State of New Jersey, whether he has ever been convicted of a crime or disorderly persons offense, whether the person is subject to a court order issued pursuant to section 13 of P.L. 1991, c. 261 (C. 2C:25-29) prohibiting the person from possessing any firearm, and such other information as the superintendent shall deem necessary for the proper enforcement of this chapter. For the purpose of complying with this subsection, the applicant shall waive any statutory or other right of confidentiality relating to institutional confinement. The application shall be signed by the applicant and shall contain as references the names and addresses of two reputable citizens personally acquainted with him.
Application blanks shall be obtainable from the superintendent, from any other officer authorized to grant such permit or identification card, and from licensed retail dealers.
The chief police officer or the superintendent shall obtain the fingerprints of the applicant and shall have them compared with any and all records of fingerprints in the municipality and county in which the applicant resides and also the records of the State Bureau of Identification and the Federal Bureau of Investigation, provided that an applicant for a handgun purchase permit who possesses a valid firearms purchaser identification card, or who has previously obtained a handgun purchase permit from the same licensing authority for which he was previously fingerprinted, and who provides other reasonably satisfactory proof of his identity, need not be fingerprinted again; however, the chief police officer or the superintendent shall proceed to investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter.
[3] We refer to the instructive discussions respecting the common law right to inspect public records, its limitations, and the requisite balancing of the public interest in disclosure against the public interest in confidentiality, contained in many Supreme Court opinions. See e.g., South Jersey Pub. Co. Inc. v. N.J. Expressway, 124 N.J. 478, 487-489, 591 A.2d 921 (1991); Loigman v. Kimmelman, 102 N.J. 98, 505 A.2d 958 (1986); McClain v. College Hosp., 99 N.J. 346, 355-56, 492 A.2d 991 (1985). As to the interrelationship of common law rights with the Right to Know Law, see Convention Center v. South Jersey Pub., 135 N.J. 53, 59-61, 637 A.2d 1261 (1994); North Jersey Newspapers v. Passaic County, 127 N.J. 9, 13-16, 601 A.2d 693 (1992); South Jersey Pub., supra, 124 N.J. at 489-490, 591 A.2d 921; and McClain, supra, 99 N.J. at 354-356, 492 A.2d 991.
[4] Section 2A:82-41.
[5] N.J.R.E. 515.