1998 ND 4

**Darin KASPROWICZ, Plaintiff and Appellant,**

v.

**Rodney FINCK, Sheriff, McHenry County, in his official capacity, Defendant and Appellee.**

**Civil No. 970068.**

Supreme Court of North Dakota.

Jan. 20, 1998.

---

Thomas K. Schoppert, of Schoppert Law Firm, Minot, for plaintiff and appellant.

Michael S. McIntee, State's Attorney, Towner, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Darin Kasprowicz appealed from a judgment dismissing his appeal from the denial of his application to renew a concealed weapon license and denying his claim for damages. We reverse and remand, concluding the chief agent of the Bureau of Criminal Investigation (BCI), not the sheriff, has the authority to grant or deny licenses to carry a concealed weapon.

I

[¶ 2] Kasprowicz applied for a renewal of his concealed weapon license. Sheriff Rodney Finck returned the application because it did not show Kasprowicz had been arrested on an ex parte warrant of attachment arising out of a child custody dispute. Kasprowicz filed a second application in which he indicated he had been arrested on a warrant of attachment in 1995. The sheriff recommended the application not be approved, giving as reasons for the recommendation: "Threats toward Public Officials" and "falsified A prior Application." The sheriff forwarded the application to the BCI. BCI Chief Agent Richard Olson recommended the application not be approved, giving as his reason: "Incomplete App.—Denied by Sheriff." The BCI chief returned the application to Kasprowicz, stating "[a]t this time I am unable to issue a permit to you because Sheriff Rodney Finck has denied the approval of your application."

[¶ 3] Kasprowicz appealed to the district court and filed a specification of error and complaint seeking "re-instatement of his license (permit) for a North Dakota Concealed Weapon Permit" and damages for violations of his constitutional rights. The sheriff answered and requested dismissal of the complaint. The BCI chief agent moved the "appeal be dismissed as against him." The district court ordered dismissal of the action against the BCI chief agent. Judgment was entered dismissing "any and all claims in this action against" the BCI chief.

[¶ 4] The district court made the following findings:

"II.

"In the fall of 1995, Kasprowicz asked Sheriff Finck to come to his home to discuss his legal problems. When the Sheriff arrived, he found Kasprowicz and Kasprowicz's father seated at the kitchen table. On the table was a loaded (as the Sheriff believed) pistol and some shells. The Sheriff felt that the presence of the weapon was an attempt to intimidate him. After a discussion with Kasprowicz about his problems, the Sheriff left the residence. The pistol was not mentioned in the discussion. Both Kasprowicz and his father have expressed dissatisfaction with the legal or judicial system in North Dakota.

"III.

". . . It is the finding of this Court that the omission of his arrest on a warrant of attachment was not a false statement on the application for a gun permit.

"IV.

"In early April of 1996, Kasprowicz called the Sheriff's office and talked directly to Sheriff Finck. He asked about the status of his application and when he was told of the denial due to the false statement, Kasprowicz replied 'I'm tired of this nightmare'. When the Sheriff asked what Kasprowicz meant, Kasprowicz indicated that he was going to give the Sheriff nightmares. Based upon the Sheriff's knowledge of Kasprowicz and his family background, the Sheriff considered this statement to be a threat against himself and his family."

[¶ 5] While the district court found the sheriff, in a conversation with Kasprowicz, "felt that the presence of the weapon was an attempt to intimidate him" and the sheriff considered Kasprowicz's statement about nightmares to be a threat, the court did not determine if Kasprowicz threatened the sheriff. The court concluded the sheriff did not abuse his discretion, dismissed Kasprowicz's appeal, and denied his claim for damages.

[¶ 6] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 62.1–04–03(6). The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–02.

II

■ [¶ 7] An individual's right to keep and bear arms under N.D. Const. Art. I, § 1, is not absolute, but "remains subject to reasonable regulation under the State's police power." *State v. Ricehill,* 415 N.W.2d 481, 483 (N.D.1987). In enacting Title 62.1, N.D.C.C., which regulates the possession of weapons, the legislature expressed its intent that regulation of "the right to possess and use firearms for lawful purposes . . . be limited to those measures necessary for public safety." 1985 N.D. Laws, Ch. 683, § 1. N.D.C.C. § 62.1–02–01 prohibits persons convicted of certain crimes from owning or possessing firearms for specified periods, prohibits a person diagnosed and confined or committed as a mentally ill or mentally deficient person from purchasing or possessing a firearm, unless the person has not suffered from the disability for three years, and prohibits a person under the age of eighteen years from possessing a handgun, except for adult-supervised firearm safety training, target shooting, or hunting.[1]

[¶ 8] N.D.C.C. § 62.1–04–03(1) provides for the issuance of licenses to carry firearms or dangerous weapons concealed, providing, in part:

"The chief of the bureau of criminal investigation shall issue a license to carry a firearm or dangerous weapon concealed upon review of an application submitted to the chief if the following criteria are met:

---

**1.** The Federal firearms statutes contain a more extensive list of prohibitions. 18 U.S.C. § 922(d) and (g) prohibit possession of a firearm in or affecting commerce by, or transfer of a firearm to, a convicted felon, a fugitive from justice, an unlawful user of controlled substances, a person adjudicated as a mental defective or committed to a mental institution, an illegal alien, a person discharged from the Armed Forces under dishonorable conditions, persons who have renounced their United States citizenship, a person subject to certain restraining orders, or a person convicted of a misdemeanor crime of domestic violence.

"a. The applicant has a valid reason for carrying the firearm or dangerous weapon concealed, including self-protection, protection of others, or work-related needs.

"b. The applicant is not a person specified in section 62.1–02–01.

"c. The applicant has the written approval for the issuance of such a license from the Sheriff of the applicant's county of residence, and, if the city has one, the chief of police or a designee of the city in which the applicant resides. The approval by the Sheriff may not be given until the applicant has successfully completed a background investigation in that county and has attended a testing procedure conducted pursuant to rules adopted by the attorney general.... The testing procedure is not required for a renewal of a concealed weapons license.

"d. The applicant satisfactorily completes the bureau of criminal investigation application form and has successfully passed a background investigation or criminal records check conducted by that agency."

This appeal deals with Sheriff Finck's failure to approve Kasprowicz's application before forwarding it to the BCI.

### III

■ [¶ 9] N.D.C.C. § 62.1–04–03(1)(c) provides only two conditions an applicant must meet before the sheriff approves an application: (1) successful completion of a back-

ground investigation in the applicant's county of residence, and (2) attending a testing procedure, which was not required of Kasprowicz because his application was for a renewal of his license. The statute does not define "background investigation." At an April 25–26, 1984, meeting of the legislature's Judiciary "B" Committee, which was then studying our weapons laws,[2] Richard Tessier of the Attorney General's Office said "the intent was that the sheriff would do a local background check and the bureau would do a statewide and national investigation." Background investigations have been held to "include such subjects as prior convictions, medical and mental disabilities, alcoholism, drug addiction, and 'other matters that ought not be disclosed in public forum absent a compelling need.'" *Southern N.J. Newspapers, Inc. v. Township of Mount Laurel*, 275 N.J.Super. 465, 646 A.2d 510, 514 (1994). *See also* 18 U.S.C. § 922(s)(2).[3] We conclude the county background investigation is calculated to uncover local evidence which might prevent issuance of a license to an applicant.

■ [¶ 10] Treating an application as incomplete if it lacks a sheriff's approval allows a sheriff to decide who may not be licensed.[4] Our primary objective in interpreting a statute not clear on its face is to ascertain the intent of the legislature. *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719. From our review of the language in N.D.C.C. § 62.1–04–03 and the legislature's stated intent, we conclude the legislature did not intend to give sheriffs discretionary authority to deny licenses.

---

**2.** Senate Concurrent Resolution No. 4053 directed the Legislative Council to study the weapons laws and "direct its efforts toward a revision of the substance, form and style of current weapons statutes." 1983 North Dakota Laws, Ch. 851.

**3.** With certain exceptions, the Brady Act, enacted in 1993, requires the chief law enforcement officer of the place of residence of a firearm transferee who has received a notice of a proposed firearm transfer from a firearms dealer to "make a reasonable effort to ascertain within 5 business days whether receipt or possession would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General." 18 U.S.C. § 922(s)(2). In *Printz v. United States*, ─── U.S. ───, ───

─── , 117 S.Ct. 2365, 2383–84, 138 L.Ed.2d 914, 942–44 (1997), the United States Supreme Court held 18 U.S.C. § 922(s)(2)'s requirement that the chief law enforcement officer of the place of residence of a proposed firearm transferee conduct "background checks on prospective handgun purchasers" to ascertain if the transfer would violate the law, unconstitutionally compels the states to administer a federal regulatory program.

**4.** *But cf.*, N.D. Admin. Code § 10–12–01–01 (to be considered complete, an application must have the signed approval of the local sheriff) and § 10–12–01–08 (the BCI chief agent may deny a permit if the applicant has not filed a completed application).

[¶ 11] The legislature's use of the words, "[t]he applicant has the written approval for the issuance of such a license from the Sheriff of the applicant's county of residence," may suggest discretion to either approve or disapprove an application. However, any discretion given to the county sheriff under N.D.C.C. § 62.1–04–03 "is symbolic at best," *Application of Dailey,* 195 W.Va. 330, 465 S.E.2d 601, 608 (1995), as the statute sets forth no grounds, other than the "testing procedure" (which does not apply to Kasprowicz), for the sheriff to do either. A statute vesting unfettered discretion in a public official or agency raises questions of constitutionality. *See Ralston Purina Co. v. Hagemeister,* 188 N.W.2d 405, 413 (N.D. 1971). "We interpret statutes to avoid constitutional questions if possible." *City of Jamestown v. Erdelt,* 513 N.W.2d 82, 85 (N.D.1994) (citing *Little v. Graff,* 507 N.W.2d 55, 59 (N.D.1993)). We conclude the sheriff must "approve" the application after completing a background investigation within a reasonable time, unless the applicant was required to take a test and objectively failed to do so. A sheriff may recommend approval or disapproval by the BCI chief, which indeed is all the application form prescribed by the BCI chief directs the sheriff to do. The sheriff may include with the recommendation to the BCI chief information relevant to public safety.

[¶ 12] The legislature has indicated its intention the BCI chief is to decide whether or not a license is issued. This is evident in the opening language of N.D.C.C. § 62.1–04–03(1): "The chief of the bureau of criminal investigation shall issue a license to carry a firearm or dangerous weapon concealed upon review of an application submitted to the chief if the following criteria are met." *See also* the following portion of the legislature's statement of its intent in enacting Title 62.1, N.D.C.C.:

> "It is the intent of the legislative assembly that the chief of the bureau of criminal investigation issue a license to carry a firearm concealed if the necessary criteria are met. It is further the intent of the legislative assembly that the chief may not use the criterion requiring a valid reason

for carrying the firearm concealed to arbitrarily deny an application for a license." 1985 N.D. Laws, Ch. 683, § 1. The legislature's intent that the BCI chief is the only official who is to decide if a license shall be issued is further evidenced in N.D.C.C. § 62.1–04–03(2), which requires the sheriff to "process the application within thirty days," and requires the BCI to "process the application and make a determination within thirty days." Significantly, while the sheriff and the BCI are both required to "process the application" within thirty days, only the BCI, and not the sheriff, is required to "make a determination."

[¶ 13] We conclude the legislature vested sheriffs with ministerial and investigative responsibilities under the statute. A sheriff must approve an application within a reasonable time, unless the applicant has objectively failed the "testing procedure" specified in N.D.C.C. § 62.1–04–03(1)(c). A sheriff forwards the results of the background investigation to BCI. In every case, a sheriff must forward the application to BCI.

[¶ 14] The legislature has not specified in detail how the BCI chief is to exercise his licensing authority or the extent of any discretion the BCI chief may exercise in deciding whether to issue or deny a license. *Compare Schubert v. DeBard,* 398 N.E.2d 1339, 1341 (Ind.App.1980) ("if it is determined ... the applicant has met the conditions of the statute, the superintendent has no discretion to withhold the license"), with *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, 408 (1988) ("providing that the sheriff *may* issue a license, shows that the intent of the legislature was to make such issuance not mandatory, but discretionary in that sheriffs are empowered to exercise judgment in applying the statute's standards to decide if applicants should be licensed"). Giving no discretion to deny an application of a person not prohibited from possessing a firearm would undercut the legislature's intent to regulate the possession and use of firearms. On the other hand, "unbridled discretion allows for capricious and arbitrary discrimination in violation of the due process clauses." *Brevard County v. Bagwell,* 388 So.2d 645, 647 (Fla.App.1980). We have held leaving

the manner and means of exercising an administrative agency's powers to the discretion of the agency implies a range of reasonableness within which the agency's exercise of discretion will not be interfered with by the judiciary. *Cass County Elec. Coop., Inc. v. Northern States Power Co.*, 518 N.W.2d 216, 220 (N.D.1994). Here, however, the BCI chief has not exercised any discretion. He considered Kasprowicz's application incomplete because it lacked Finck's approval for issuance of a license. On remand, the parties will have an opportunity to address the extent of the discretion afforded the BCI chief, and he will have an opportunity to exercise his discretion under N.D.C.C. § 62.1–04–03 and N.D.C.C. Chapter 28–32.

### IV

[¶ 15] The judgment is reversed, and the matter is remanded for further proceedings. The district court shall hold further action in abeyance while the sheriff forwards Kasprowicz's application to the BCI chief, who may then exercise his discretion under N.D.C.C. § 62.1–04–03 and N.D.C.C. Chapter 28–32.

[¶ 16] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

