682 A.2d 1232

LAKEWOOD RESIDENTS ASSOCIATION, INC., PLAINTIFF, v. TOWNSHIP OF LAKEWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, LAKEWOOD HOUSING AUTHORITY, LAKEWOOD TOWNSHIP RENTAL ASSISTANCE PROGRAM, AND LAKEWOOD TENANTS ORGANIZATION, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided October 28, 1994.

*Laura Campbell Shroba* for plaintiff.

*Dominick M. Manco* for Township of Lakewood (Township Attorney).

*Norman D. Smith* for Lakewood Housing Authority.

*Lee David Medinets* for Lakewood Township Rental Assistance Program and Lakewood Tenants Organization, Inc.

SERPENTELLI, A.J.S.C.

This case requires the court to examine a novel question concerning the interrelationship of the New Jersey Right to Know Law (*N.J.S.A.* 47:1A–1 *et seq.*), the federal Freedom of Information Act and Privacy Act, as well as other federal regulations relating to disclosure under our Right to Know Law.

In this Action In Lieu Of Prerogative Writs, the plaintiff, Lakewood Residents Association (LRA), seeks to compel the defendants Township of Lakewood, Lakewood Housing Authority (LHA), Lakewood Tenants Organization (LTO) and Lakewood Township Rental Assistance Program (LTRAP) to release to the plaintiff either the Housing Assistance Payments Contracts (HAC) which the defendant housing agencies maintain on file, or a list of landlords, properties and rent subsidies paid pursuant to the Section 8 Housing Assistance Programs (hereinafter Section 8 program),[1] which information is contained within those contracts. LHA is a municipal agency created by ordinance pursuant to *N.J.S.A.* 40A:12A–17. LTO is a private non-profit corporation of New Jersey which has been authorized by the Township of Lakewood to operate the Lakewood Township Rental Assistance Program.[2]

The Section 8 program is a federally subsidized venture administered by the United States Department of Housing and Urban Development (HUD). It is funded entirely through federal tax dollars and administered by public housing agencies (PHA) pursuant to federal guidelines. A "public housing agency" as defined by 24 C.F.R. Ch. VIII, § 882.102, may enter into an Annual Contributions Contract (ACC) with HUD. Under the ACC, HUD agrees to provide financial assistance to the PHA to make housing assistance payments on behalf of eligible families.

The PHA has the obligation to select housing units which meet housing quality standards (24 C.F.R. Ch. VIII, § 882.109) and fair market rent limitations (24 C.F.R. Ch. VIII, § 888.101–.115). If

---

[1] All references to the Section 8 program apply to Section 8 of the United States Housing Act of 1937, known as 42 U.S.C. § 1437 *et seq.*

[2] Pursuant to an agreement dated August 27, 1982, between the Township of Lakewood and LTO, all programs theretofore administered by LTO were to be carried out thereafter under the name of LTRAP. LTO was immediately to commence use of such name when acting as the Township's designee with respect to rental assistance programs. All references hereafter to LTRAP or LTO shall be deemed interchangeable.

the unit and rental rate are acceptable, the PHA executes a HAC with the owner. While Section 8 regulations vary as between Rental Certificates and Rental Vouchers, generally speaking the tenant pays approximately thirty percent of the family's adjusted monthly income to the landlord and the PHA pays the balance of the rent. The subsidy is determined by the PHA in accordance with HUD regulations.

The purpose of the Section 8 program is to enable a PHA to offer lower income families the opportunity to obtain housing in non-impacted areas (non-impacted areas are those areas with a substantially lower proportion of lower-income residents than the surrounding area), thus avoiding concentration of assisted housing in confined areas. The defendant PHAs argue that this approach also gives the tenants a freedom to exercise a real housing choice as well as anonymity from the "stigma" of receiving rental assistance.

In 1991, LRA requested the defendants and the New Jersey Department of Community Affairs (DCA) Section 8 program in Lakewood to provide a list of landlords, the street addresses for respective properties rented under the program and the monthly supplemental amount paid to the landlords. DCA complied with the request concerning the program it administers. LHA and LTRAP refused to provide the data and the Township apparently acquiesced in the refusal.

After two years of failed negotiations between LRA, LHA and LTRAP, the plaintiff, on June 10, 1994, brought an Order to Show Cause to require the release of the requested documents under *N.J.S.A.* 47:1A–1, the "Right to Know Law," or pursuant to the common law principles concerning the right to obtain such documents.

Both LHA and LTRAP stress that the housing contracts are maintained pursuant to federal law and regulations, not state law. LTRAP contends that it is acting as an agent of the federal government, providing local administration of a federal rent subsidy program, and thus it is prohibited from releasing any Section 8

program information pursuant to the Federal Privacy Act, 5 U.S.C. § 552a and the regulations implementing the statute, specifically 24 C.F.R., Ch. VII, §§ 750.20 and 760.20. LHA does not claim to be a federal agency but asserts that the New Jersey Right to Know Law incorporates the protection of the federal law and regulations so as to preclude disclosure. Plaintiff counters that, in addition to its right to disclosure under state law, LRA is entitled to obtain the requested data under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. This opinion addresses plaintiff's asserted right to the disclosure under federal and state law.

The Freedom of Information Act requires federal agencies to release requested information contained in agency files. It imposes a tripartite scheme of disclosure. First, each federal agency must publish in the Federal Register the agency's organization, statements of the agency's function, substantive rules and related information. 5 U.S.C. § 552(a)(1). Second, each federal agency must make available final agency statements and orders, opinions and interpretations when not published in the Federal Register, and administrative staff manuals and staff instructions affecting the public. *Id.* at § 552(a)(2). Finally, all other agency records must be produced upon request, unless the record is shielded from disclosure by one of the nine exemptions contained in the Act. *Id.* at § 552(b). The statute creates a presumption that all records of governmental agencies must be accessible to the public. The burden is on the agency withholding a document to establish that it should not be released. The objective of the statute is to require the fullest possible disclosure of information to the public.

On the other hand, the Privacy Act, 5 U.S.C. § 552a, generally prevents a federal agency's disclosure of information pertaining to an individual unless the individual has made a request for it or has given consent to its release in writing, or unless disclosure is permitted under one or more of the eleven exceptions to that Act. *Id.* at § 552a(b)(1)–(11). Section 552a(t) of the Privacy Act also

makes clear that it is to be construed separately and independently from FOIA. It states:

(t) Effect of other laws—(1) No agency shall rely on any exemption contained in section 552 [Freedom of Information Act] of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section. [Privacy Act]

(2) No agency shall rely on any exemption in this section [Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of section 552 [Freedom of Information Act] of this title.

Thus, in order to withhold information, the agency must demonstrate that the document falls within a FOIA exemption *and* does not fall within an exception to the Privacy Act. If a FOIA exemption protects the documents, but the Privacy Act exception permits the disclosure, the documents must be released under the Privacy Act. If the Privacy Act precludes access, but FOIA permits disclosure, the documents must be released under FOIA. *Shapiro v. Drug Enforcement Admin.*, 762 *F*.2d 611 (7th Cir.1985); Susman, Thomas M., *The Privacy Act and the Freedom of Information Act: conflict and resolution*, 21 *John Marshall L.R.* 703 (1988).

Both FOIA and the Privacy Act are also intended to apply only to "agencies" as that term is defined by 5 U.S.C. §§ 551(1) and 552(f). Under these definitions, "agency" generally encompasses only federal entities. Although state and local governmental units and private grantees may be regulated and completely funded by the federal government, it does not necessarily follow that these bodies fall within the definition of "agency." "Extensive, detailed and virtually day-to-day supervision by the federal government is needed before agency status could be said to attach." *St. Michael's Convalescent Hospital v. State of California*, 643 *F*.2d 1369, 1374 (9th Cir.1981); *Forsham v. Harris*, 445 *U.S.* 169, 180, 100 *S.Ct.* 977, 984, 63 *L.Ed.*2d 293, 304 (1980).

As noted earlier, LTRAP contends that it is an agent of the federal government, administering a federally funded local public housing assistance program. Thus, it asserts the requested information is subject to the Privacy Act and not the New Jersey Right

to Know Law.[3] Plaintiff argues that the defendants[4] are local entities and are thus subject to both statutory and common law provisions governing document disclosure. Alternatively, plaintiff maintains that should federal law apply, the documents are still obtainable under FOIA. Therefore, the threshold question is whether LTRAP is an "agency" under 5 U.S.C. §§ 551(1) and 552(f) so as to be subject to the provisions of FOIA and the Privacy Act.

Section 551(1) defines an agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency. . . ." Section 552(f) expands that definition for the purposes of FOIA and the Privacy Act to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." Nowhere within either definition is it even remotely implied that a local governmental body or agency thereof is to be construed as a federal agency.

The United States Supreme Court in *Forsham* held that a private health organization, funded solely by federal grants, did not obtain "agency" status so as to subject it to FOIA. The private organization was supervised in some aspects of its operation by the National Institute of Arthritis, Metabolism, and Digestive Diseases (NIAMDD), a federal agency. NIAMDD's regulations required periodic reports to be submitted by the private organization, allowed for on-site visits of its facilities, and required agency approval of major program or budgetary changes. *Forsham*, 445 *U.S.* at 172–73, 100 *S.Ct.* at 980–81. The actual day-to-

---

[3] As stated, LHA does not claim federal agency status but asserts protection under federal regulations.

[4] All references to the defendants hereinafter shall apply to LHA, LTRAP and LTO since the defendant Lakewood Township has been a passive party in these proceedings.

day administration of grant-supported activities, however, was still conducted by the private organization.

The Court stated that "[g]rants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision." *Id.* at 180, 100 *S.Ct.* at 984. The Court said that Congress shielded private grantees from FOIA disclosure obligations by excluding them from the definition of "agency." It noted that Congress could have provided that the records generated by a federally funded grantee were federal property even though the grantee had not been adopted as a federal entity. But Congress chose not to do so in an effort to preserve the grantees' autonomy. The Court supported its determination by a review of the legislative history of FOIA. *Id.*

The reasoning of the *Forsham* decision was expanded in *St. Michael's* to include state and local governmental bodies. In *St. Michael's*, three health care providers sought to enjoin the California Department of Health Services (DHS) from releasing cost information which the plaintiffs provided to the defendants. The DHS received funding through the federal Medicaid program and was subject to Medicaid's statutory and regulatory scheme. *St. Michael's*, 643 *F.*2d at 1373. In rejecting the plaintiff's claim that DHS was an "agency" subject to FOIA and the Privacy Act, the Court stated:

> Federal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state governmental bodies into federal governmental acts. [citations omitted] Extensive, detailed and virtually day-to-day supervision by the federal government is needed before 'agency' status could be said to attach. *Id.* at 1373–74. [citations omitted]

This court conducted oral argument on August 12, 1994, principally directed to the issue of federal oversight of the defendants. At that time, the attorneys for LHA and LTRAP conceded that there is no day-to-day or week-to-week involvement of HUD in

their activities. While there is regular periodic review in terms of auditing, monitoring and confirming compliance with federal regulations, it is clear that routine supervision is conducted by each PHA. There are no special circumstances which suggest that they should not be treated in the same manner as the organizations involved in *Forsham* and *St. Michael's*. Indeed, LTRAP can easily be equated to the private agency involved in the *Forsham* case and LHA to the public agency involved in *St. Michael's*.

■ It should be noted in passing that, even if the court were to assume *arguendo* that FOIA applied to the defendants, and that they could successfully invoke the Privacy Act, they are unable to cite any exemption from FOIA which would protect the information the plaintiff seeks. LTRAP directs the court to 5 U.S.C. § 552(b)(4) of FOIA which provides that the Act does not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential".

LTRAP relies on *Benson v. General Services Administration*, 289 *F.Supp.* 590 (W.D.Wash.1968) and *Burke Energy Corporation v. Department of Energy*, 583 *F.Supp.* 507 (D.Kan.1984) to bolster its claim. These cases demonstrate that the exemption is intended to deal with documentary matters wholly unrelated to the HAC involved here. In *Benson*, the plaintiff sought disclosure of such items as the defendant's memorandum regarding the disposal of surplus real property, a memorandum relating to the disposition of bids received by the defendant, an internal memorandum concerning deviations from standard credit terms for alternative bids, a memorandum about bid comparisons, appraisal reports and other related documents. In *Burke*, the plaintiff attempted to obtain documents regarding the Department of Energy's audit of an oil company and the settlement and consent order resulting from the audit.

The legislative history of the (b)(4) exemption, as well as the case law interpreting it, amply demonstrates its inapplicability to the case before the court. The court in *Burke* said in that regard:

The application of the (b)(4) exemption is to be narrowly construed. The kinds of information that other courts have held to be within the exemption include the following: sales and profit data, breakdowns of sales, market share data, and confidential bid amounts, [citation omitted] business sales statistics including total net sales, total costs and expenses, operating costs, gross sales, and renegotiable sales, [citation omitted] legal memorandum prepared by attorney for commercially-owned utility for use to determine whether to bring suit against contractor, [citation omitted] results of audits of books, including sales statistics, inventories, holdings, expenses, statement of profits and gross receipts, securities, liabilities, and employee salaries and bonuses, ... [citations omitted; 583 *F.Supp.* at 511].

The reports accompanying the bills before the House of Representatives and the Senate also support the conclusion that the exception relied upon by the defendants does not protect against release of the housing contract entered into between a landlord and a PHA.[5]

### The Senate Report provides:

Exemption No. 4 is for 'trade secrets and commercial or financial information obtained from any person and privileged or confidential.' This exception is necessary to protect the confidentiality of information which is obtained by the Government through questionnaires or other inquiries, but which would customarily not be released to the public by the person from whom it was obtained. This would include business sales statistics, inventories, customer lists, and manufacturing processes. It would also include information customarily subject to the doctor-patient, lawyer-client, lender-borrower, and other such privileges. Specifically it would include any commercial, technical, and financial data, submitted by an applicant or a borrower to a lending agency in connection with any loan application or loan. S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).

### The House of Representatives Report states:

4. Trade secrets and commercial or financial information obtained from any person and privileged or confidential: This exemption would assure the confidentiality of information obtained by the Government through questionnaires or through material submitted and disclosures made in procedures such as the mediation of labor-management controversies. It exempts such material if it would not customarily be made public by the person from whom it was obtained by the Government. The exemption would include business sales statistics, inventories, customer lists, scientific or manufacturing processes or developments, and negotiation positions or requirements in the case of labor-management mediations. It

---

5 It has been noted that there is some language difference in the commentary of the House and Senate reports. *Benson v. General Services Administration,* 289 *F.Supp.* at 595. In any event, the differences in language do not argue for a different result.

would include information customarily subject to the doctor-patient, lawyer-client, or lender-borrower privileges such as technical or financial data submitted by an applicant to a Government lending or loan guarantee agency. It would also include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations. H.R.Rep. No. 1497, 89th Cong., 1st Sess. 10 (1965), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2427.

Therefore, it is evident that neither FOIA nor the Privacy Act directly applies to the issue of whether the plaintiff may obtain the information for which this suit was brought. While a strained argument could be made that the exemption might protect tenant information such as income or social security numbers, there is no basis in the statute, case law or legislative history, to suggest that it prevents the release of the information the plaintiff requests.

Thus, the court must turn to the plaintiff's contention that it is entitled to compel, under our state law, production of either a copy of the HAC or a list of the names of the landlords, properties, and subsidies involved in the Section 8 program. The plaintiff first asserts that it is entitled to that information pursuant to the New Jersey Right To Know Law. The dispute in this regard centers around the scope of *N.J.S.A.* 47:1A-2. That statute provides in part:

Except as otherwise provided in this act or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any *Federal Law, regulation or order,* or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are *required by law to be made, maintained or kept on file* by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or of any political subdivision thereof, or by any official acting for or on behalf thereof ... shall, for the purposes of this act, be deemed to be public records. [emphasis added]

 First, it should be repeated that LHA is a public housing agency created pursuant to *N.J.S.A.* 40A:12A-17. It is certainly subject to the Right To Know Law. LTRAP is a program administered by LTO, a nonprofit organization. However, LTO acts as an agent of the Township of Lakewood in the implementation of the program and it is specifically authorized to act as a

PHA under federal regulations. 24 C.F.R. Ch. VIII, § 882.102. That regulation defines a PHA as "[a]ny State, county, municipality or other governmental entity or public body [or agency or instrumentality thereof] which is authorized to engage in or assist in the development or operation of housing for low-income [f]amilies." The Township has made it possible for LTO to function in that capacity. Furthermore, HUD obviously recognizes LTO as a public housing agency within the definition of the term since it directly funds its operation. Finally, counsel for both LHA and LTRAP do not dispute that the Right To Know Law applies to them if the court determines that federal law should not apply.

 Instead, the defendants contend that, to the extent that the plaintiff relies upon the Right To Know Law to obtain the documents or information in dispute, it is precluded from doing so by the express language of *N.J.S.A.* 47:1A–2 which exempts from disclosure information shielded by "any Federal Law, regulation or order." Defendants point the court to the provisions of 24 C.F.R. Ch. VII, §§ 750.20 and 760.20.

C.F.R. § 750.20 provides:
The collection, maintenance, use, and dissemination of SSNs and EINs obtained pursuant to this part, and of any information derived therefrom, must be conducted, to the extent applicable, in compliance with the Privacy Act [5 U.S.C. 552a] and all other provisions of Federal, State and local law.

C.F.R. § 760.20 reads:
The collection, maintenance, use and dissemination of employee income information and wage and claim information under this part shall be conducted, to the extent applicable, in compliance with the Privacy Act [5 U.S.C. 552a] and all other provisions of Federal, State, and local law.

Thus, the defendants assert that even if they are not federal agencies directly subject to FOIA or the Privacy Act, the data plaintiff seeks has been given Privacy Act protection through these regulations. The defendants reason that they will not enter into any HAC without first verifying the financial information requisite to approval of the contract through the use of the applicant's social security number. While they concede that the financial information is obtained without the social security num-

ber for initial determination of eligibility, they utilize the social security number to verify the accuracy of the information and to serve as a justification for entering into the HAC. Thus, they claim that in the language of the regulation, all of the information derived from the social security number concerning the tenant's eligibility must be protected from disclosure.

The plaintiff counters that it is not interested in obtaining any information concerning the tenants and would agree to have all of that data redacted from the contract which is released to it. Alternatively, plaintiff would accept a list of the landlords, the streets upon which the properties are located and the amount of federal funds the landlords receive for each property. Defendants respond that any such list or redacted contract would allow the plaintiff to receive by indirection that which it cannot get directly. The PHAs reason that the plaintiff could discover which tenants lived at the identified properties and, with knowledge of the federal eligibility requirements and the amount of rent, calculate the tenants' approximate incomes. Thus, the defendants assert that §§ 750.20 and 760.20 must be read broadly to preclude discovery of any documentation which would undermine the purpose of the regulations.

Defendants also stress that if the court does not read the sections that broadly, it could subject the PHAs or their directors to criminal or civil penalties pursuant to 42 U.S.C. § 3544(c)(3). That statute provides, among other things, that any person who discloses "in any manner" information derived from a social security number to any individual "not entitled under any law to receive it" can be subject to these penalties.

The difficulty with the defendants' argument is that it urges the court to give an overly expansive reading to language which is very specific. It is evident that § 750.20 is intended (as are many other federal regulations) to protect unwarranted disclosure of social security numbers or employer identification numbers. The potential for abuse of such information is well known. However, the release of the HAC with the social security number redacted

by court order, will not in any way violate the regulation or subject the PHAs to the feared penalties. The same can be said with respect to § 760.20. Even assuming it has any relevance to this case given its applicability to "employee" income, wage and claim information, it is not clear how that data would be pertinent to the HAC contents. The only connection is the defendants' repeated concern that tenant wage information can be surmised through the discovery that a tenant is receiving a Section 8 program subsidy. That perception will be addressed later.

In truth, the regulations simply do not contemplate the situation involved in this case. The court accepts the proposition that HUD might be able to extend its regulations beyond their present scope and perhaps exclude all documentation involved in the application and grant process. Whether it would deem such total secrecy appropriate is not known. The fact is, however, it has not gone that far with the cited regulations.

Having determined that the defendants are not protected from disclosure under federal law, the court must first decide if the plaintiff has a statutory right to disclosure under the New Jersey Right To Know Law. The critical question in examining the applicability of *N.J.S.A.* 47:1A–2 is whether the document or information sought by the plaintiff is "required by law to be made, maintained or kept on file" by the defendants.

The PHAs have conceded that they are required to maintain the HAC on file. 24 C.F.R. Ch. VIII, § 882.209(k)(3). That having been determined, and there being no other exemption under state law which protects the document from being released, the plaintiff's right to obtain the information is absolute. That is to say, once a party demonstrates a statutory right to disclosure, the court cannot engage in a weighing process concerning the relative interests of the parties. The document must be produced. *Techniscan Corp. v. Passaic Valley Water Commission,* 113 *N.J.* 233, 236, 549 *A.*2d 1249 (1988); *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 579, 610 *A.*2d 903 (App.Div.1992), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992).

Thus, the court concludes that the plaintiff is entitled to receive the HAC or a list of the landlords, along with the properties and rent subsidies involved. The plaintiff has consented to redaction of the HAC to eliminate any tenant information which may possibly be protected by the federal regulations discussed earlier. The court will allow the defendants the option to provide either a list of landlords, properties and rent subsidies, or the defendants shall have the right to redact from the housing contracts, if they are utilized, all information pertaining to the tenants or the tenants' financial matters.

The court recognizes that by requiring the production of the HACs or lists of the landlords, their properties and subsidies, the plaintiff may be able to determine the approximate income of tenants who might be identified at the subsidized units involved.

In the first place, there is no clear showing that this feared result, and the "stigma" which the defendants claim would automatically follow, is anything more than theoretical or interposed as a means to frustrate access. Indeed, it is worthy to note that the New Jersey DCA complied with LRA's request for the same class of information requested here.

Furthermore, the plaintiff protests that it has no interest in those facts. Given the justifications for its inquiry, there does not appear to be any evident reason why they would seek that information. The plaintiff states that it is looking for potential conflicts of interest in those landlords receiving subsidy payments or, alternatively, for verification that subsidy payments are being made for tenants who are occupying tax exempt properties. Neither ground suggests the plaintiff's motivation is to determine the tenants' identity or income.

Most importantly, the fact is that either Congress or HUD could have prevented disclosure of all of the documents or any information maintained in connection with Section 8 subsidy programs either by amending FOIA and the Privacy Act, or more readily, by encouraging HUD to adopt a regulation to that effect. Indeed, an expansion of §§ 750.20 or 760.20 could have expressly

accomplished that purpose. *Cf. Forsham*, 445 *U.S.* at 180, 100 *S.Ct.* at 984.

Finally, the court must always maintain a clear focus on the intent of the Right to Know Law and resist attempts to limit its scope, absent a clear showing that one of its exemptions or the exceptions incorporated in the statute by reference are applicable to the requested disclosure. The salutary purpose, simply put, is to maximize public knowledge about public affairs and to minimize the evils inherent in a secluded process. *N.J.S.A.* 47:1A–1; *Nero v. Hyland*, 76 *N.J.* 213, 221, 386 *A.*2d 846 (1978). Exposure of records to the light of public scrutiny may perhaps cause discomfort to some. However, the Right to Know Law is founded on the premise that society as a whole suffers far more if governmental bodies are permitted to operate in secrecy. The United States Supreme Court has said:

> The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know what their government is up to. *Environmental Protection Agency v. Mink*, 410 *U.S.* 73, 105, 93 *S.Ct.* 827, 845, 35 *L.Ed.*2d 119, 142 (1973) (Douglas, J., dissenting).

Plaintiff's counsel may submit an order in conformity with this opinion.